**HITACHI METALS, LTD., Plaintiff,**

v.

**Donald J. QUIGG, Commissioner of Patents and Trademarks, Defendant,**

**Allied–Signal, Inc., Intervenor.**

**Civ. A. No. 89–1340 SSH.**

United States District Court, District of Columbia.

Oct. 18, 1991.

Thomas J. MacPeak, Washington, D.C., for Hitachi Metals, Ltd.

Fred E. McKelvey, Patent & Trademark Office, Office of the Sol., Arlington, Va., for Quigg.

William K. West, Washington, D.C., for Allied–Signal, Inc.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on motions to dismiss by defendant Donald J. Quigg, Commissioner of Patents and Trademarks (the Commissioner), and by intervenor Allied–Signal, Inc. (Allied), and on a motion for summary judgment by plaintiff, Hitachi Metals, Ltd. (Hitachi). The Court dismisses Hitachi's complaint with respect to both the defendant and the intervenor in this action, because the Court lacks subject matter jurisdiction to consider plaintiff's challenge to the grant of a reissue patent to Allied, and because plaintiff lacks standing to bring this action.[1]

### Background

Plaintiff is a Japanese corporation that manufactures and sells amorphous metals in the United States. Intervenor, an American corporation, competes with Hitachi in this market and owns a reissue patent, U.S. Patent No. 32,925, for amorphous metals. Hitachi alleges that the defendant Commissioner reissued Allied's patent for amorphous metals in a manner which violated the regulations set forth at 37 C.F.R. § 1.56, exceeded the Commissioner's authority under the Patent Statute, 35 U.S.C. § 251, and involved both unlawful agency action and agency action unlawfully withheld under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), (2)(A), (C). Hitachi also maintains that the Commissioner's notice purporting to waive the requirements set forth in 37 C.F.R. § 1.56 is an invalid rule, issued and applied in violation of the APA, specifically, 5 U.S.C. §§ 553, 706(1), (2)(A), (C), and (D).

The Patent and Trademark Office (PTO) first issued the patent in question, U.S. Patent 3,856,513 ('513 Patent), to Hou–Sou Chen, et al., in December of 1974.[2] Claiming that Hitachi and others were infringing on this patent, Allied initiated a proceeding before the United States International Trade Commission (ITC), seeking to have amorphous metals manufactured by Hitachi and others excluded from the United States market. In July 1984, the ITC determined that Allied's '513 Patent was unenforceable, because Allied's "gross negligence" had caused it to make material misrepresentations to the PTO. Allied's subsequent appeal of the ITC decision was never considered on its merits, because the United States Court of Appeals for the Federal Circuit found that the appeal had not been filed until after the expiration of the statutory period. Thus unable to appeal the ITC's decision, Allied filed a reissue application for Patent '513 with the PTO on October 23, 1986.

On February 9, 1987, Hitachi filed a protest in response to Allied's reissue application. Hitachi's protest, filed pursuant to 37 C.F.R. § 1.56(h), sought rejection of Allied's reissue claims on multiple grounds, including Allied's alleged violation of the duty of disclosure through gross negligence, which, if established by clear and convincing evidence, mandated rejection under 37 C.F.R. § 1.56(d). With Allied's reissue application still pending, the Commissioner published a notice in the Official Gazette of the Patent and Trademark Of-

---

1. The Court addresses defendant's motion to dismiss and intervenor's motion to dismiss together, because both motions address a single set of claims asserted by plaintiff on the same inadequate bases for jurisdiction and standing. Plaintiff has not stated a distinct claim or set of claims against intervenor and intervenor has not filed any counterclaims against plaintiff.

2. Although the pleadings do not specify the relationship between Hou–Sou Chen, et al., and intervenor, based on the facts alleged in the pleadings the Court assumes that Allied acquired the rights to the '513 Patent from Hou–Sou Chen, et al.

fice on October 11, 1988 (October 1988 Notice), stating that "the Office will no longer investigate original or reissue applications under 37 C.F.R. § 1.56 and to the extent 37 C.F.R. § 1.56 now requires the Office to do so, it is hereby waived." The notice also stated that "examination of lack of deceptive intent in reissue applications will continue but without any investigation of inequitable conduct issues. Applicant's statement of lack of deceptive intent will normally be accepted as dispositive except in special circumstances such as an admission or judicial determination of fraud or inequitable conduct."

Plaintiff filed a second protest to Allied's reissue application on April 25, 1989, asserting once again that PTO rules required rejection of the application and that the October 1988 Notice was irrelevant, because it had not been validly adopted pursuant to the Administrative Procedure Act, 5 U.S.C. § 553. On May 9, 1989, the PTO issued a decision on plaintiff's protest, stating that prosecution of Allied's reissue application would not be reopened, that the evidence in the record was not "sufficient to conclude that reissue is not proper," and that based on the October 1988 Notice, the PTO no longer investigated "fraud" issues.

After learning of the PTO's decision regarding its second protest, plaintiff filed the complaint which initiated this civil action. In Count One, Hitachi contends that the Commissioner's failure to follow 37 C.F.R. § 1.56 constituted an agency action unlawfully withheld under 5 U.S.C. § 706(1), and arbitrary and capricious action under 5 U.S.C. § 706(2)(A). In Count Two, plaintiff asserts that the Commissioner's October 1988 Notice waiving the requirements of 37 C.F.R. § 1.56 constituted unlawful agency action under 5 U.S.C.

§§ 706(2)(A), (C), and (D), because it was an invalid attempt at substantive rule making in violation of the APA rule making requirements set forth in 5 U.S.C. § 553. Alternatively, in Count Three, plaintiff argues that even if the October 1988 Notice was validly enacted, it was unlawfully applied pursuant to 5 U.S.C. §§ 706(1) and 706(2)(A). Finally, in Count Four, plaintiff claims that the Commissioner's reissue of Allied's patent was not authorized by the Patent Statute, 35 U.S.C. § 251, and therefore constituted unlawful agency action under 5 U.S.C. §§ 706(2)(A) and (C).[3] In support of this claim, Hitachi alleges that the law required the Commissioner to assign a collateral estoppel effect to the ITC's findings of inequitable conduct and to reject Allied's reissue application based on those findings.

Plaintiff requests relief in the form of: (1) a declaratory judgment holding the PTO's October 1988 Notice null and void, (2) an injunction prohibiting both enforcement of the October 1988 Notice and retroactive enforcement of any valid codification of the notice, (3) an injunction prohibiting the Commissioner from reissuing the '513 Patent until final determination of this action, (4) a writ of mandamus directing the Commissioner "to give proper consideration" to Allied's alleged breach of its duty of disclosure, (5) an injunction requiring the Commissioner to give collateral estoppel effect to the ITC's factual findings regarding Allied's conduct, (6) an injunction prohibiting the Commissioner from reissuing the '513 Patent if it was issued based on material representations made through gross negligence, (7) an order retaining jurisdiction of this action pending the Commissioner's final decision on Allied's reissue

---

3. 35 U.S.C. § 251 states, in part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accord-

ance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue. . . .

The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.

application, and (8) any further relief to which plaintiff is entitled.[4]

On May 19, 1989, the PTO reissued the '513 Patent, Reissue Patent No. 32,925, to intervenor Allied. The Commissioner subsequently filed a motion to dismiss Hitachi's action, and plaintiff responded with a motion for summary judgment. After receiving the Court's authorization to intervene, Allied filed its own motion to dismiss plaintiff's action. Following Allied's intervention, Hitachi modified its request for relief by asking that the Court issue an order directing Allied to surrender its reissue patent. Plaintiff also reiterated its request that the Court retain jurisdiction of this action, and its request that the Court issue injunctions requiring the Commissioner to abide by 37 C.F.R. § 1.56 and by the determinations of the ITC when reconsidering Allied's reissue application.

*Discussion*

I. Subject Matter Jurisdiction.

■ Plaintiff asserts that 28 U.S.C. § 1331 provides this Court with jurisdiction to review the PTO's decision to reissue Allied's patent under the APA, 5 U.S.C. § 701, *et seq.* The Court disagrees. The Court lacks subject matter jurisdiction over Hitachi's claims, because the comprehensive scheme Congress established to govern patent grants reveals Congress's intent to preclude judicial review of PTO examination decisions at the behest of third parties protesting the issue or reissue of a patent. "[T]he [general] presumption favoring judicial review of administrative action may be overcome by inferences of intent drawn

4. Hitachi also filed a motion for an order temporarily restraining the Commissioner from issuing or reissuing Patent '513. The Court denied plaintiff's motion for a temporary restraining order on May 18, 1989.

5. The Court in *Clarke* held that a trade association representing competitors of commercial banks has standing under the National Bank Act, because Congress intended the Act to prevent the "perceived dangers of unlimited branching," and because there were "no indications of the kind presented in *Community Nutrition Institute* that make 'fairly discernible' a congressional intent to preclude review at respondent's behest." *Clarke,* 479 U.S. at 402–403,

from the statutory scheme as a whole." *Block v. Community Nutrition Inst.,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984); *see also Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977) (Voting Rights Act of 1965 precludes judicial review of the Attorney General's decision not to object to a change in voting procedures); *Switchmen's Union v. National Mediation Bd.,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943) (Railway Labor Act precludes judicial review of National Mediation Board decisions to certify representatives for collective bargaining); *cf. Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 402–403, 107 S.Ct. 750, 758–759, 93 L.Ed.2d 757 (1987) (although the National Bank Act did not expressly provide for judicial review at the behest of trade associations representing competitors of commercial banks, Congress intended to authorize these associations to seek judicial review of rulings by the Comptroller of the Currency).[5] The Commissioner has demonstrated that such inferences of congressional intent to preclude judicial review are "fairly discernible in the statutory scheme" governing patent grants. *Association of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970). Through this showing of "contrary legislative intent," the Commissioner has satisfied the standard of "clear and convincing evidence" required to preclude judicial review of agency action and to mandate dismissal of plaintiff's suit. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).[6]

107 S.Ct. at 758–759 (citing *Block,* 467 U.S. 340, 104 S.Ct. 2450, and quoting *Association of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970)).

6. The APA authorizes those "suffering legal wrong, because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to obtain judicial review of agency actions. However, the APA is inapplicable when a statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). In *Block,* the Supreme Court elaborated on the *Abbott* standard for determining whether a statute precludes judicial review. The *Block* court explained that the *Abbott* standard could be satisfied "even ... [in cases where] proof of

"[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Block*, 467 U.S. at 349, 104 S.Ct. at 2456.[7] The Patent Statute is addressed to patent owners and patent applicants. The patent examination process is an *ex parte* proceeding, not an adversarial one, and the Patent Statute's judicial review provisions contain no gaps requiring the Court to exercise its power.[8] The Patent Statute explicitly authorizes patent owners to apply for reissue of a patent, 35 U.S.C. § 251, and confers on those applicants the right to seek administrative and judicial review of PTO examination decisions. *See* 35 U.S.C. § 131 (administrative appeal of examiner's decision to the Board of Patent Appeals and Interferences); 35 U.S.C. § 134 (direct appeal of Board decisions to the Federal Circuit); 35 U.S.C. § 145 (judicial review by civil action in this court); 35 U.S.C. § 251 (the provisions governing original patent applicants also govern reissue applicants). In contrast, Title 35 contains no provision expressly authorizing administrative or judicial review of a PTO decision at the behest of a third-party protestor.

Aware that the Patent Statute implicated third-party interests, Congress provided only for administrative and judicial review of reissue decisions at the behest of reissue applicants. Consequently, "[t]o infer that Congress intended, nevertheless, to grant third part[ies] ... a right to judicial review" of PTO reissue decisions would be inconsistent with the administrative scheme designed to implement U.S. patent law and "wholly unwarranted." *Syntex v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1574 (Fed.Cir.1989). In *Syntex*, the Federal Circuit held that it lacked subject matter jurisdiction over a suit by a third party reexamination requester alleging that the PTO had conducted a reexamination proceeding improperly. The *Syntex* court also concluded that the plaintiff lacked standing. *Syntex*, 882 F.2d at 1574; *see also Yuasa Battery Co. v. Commissioner of Patents and Trademarks*, 3 U.S.P.Q.2d (BNA) 1143, 1987 WL 9519 (D.D.C.1987) (reexamination requester does not have standing to appeal reexamination decision); *cf. Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed.Cir.1988) (Commissioner's stay of a reexamination proceeding violated the statutory requirement that reexamination proceedings be "conducted with special dispatch.").[9]

specific congressional intent [is] not 'clear and convincing' in the traditional evidentiary sense." *Block*, 467 U.S. at 350, 104 S.Ct. at 2456.

7. *See also Dellums v. Smith*, 797 F.2d 817 (9th Cir.1986) (because the Ethics in Government Act explicitly authorizes only congressional judiciary committee members to seek judicial review of the Attorney General's decision regarding investigations of criminal allegations against high level officials, the Act did not grant private citizens the right to seek judicial review or procedural rights sufficient to support standing); *Switchmen's*, 320 U.S. at 300–301, 64 S.Ct. at 96–97 (Railway Labor Act precluded judicial review of certification decisions by the National Mediation Board, because the Act explicitly authorized only the National Mediation Board to resolve conflicts regarding the certification of representatives for collective bargaining).

8. Congress has explicitly designated other PTO proceedings as *inter partes*, including patent interferences, 35 U.S.C. § 135(a), and trademark oppositions and cancellations, 15 U.S.C. §§ 1063, 1064, 1067. In contrast, the provisions governing the patent application and examination process prescribe an *ex parte* proceeding. 35 U.S.C. §§ 131, 132, 133, 134, 141, and 145. *See also Williams Mfg. Co. v. United Shoe Machinery Corp.*, 121 F.2d 273, 277 (6th Cir.1941) ("[T]he granting of a patent is not, except when an interference is declared, the result of an adversary proceeding."); *Godtfredsen v. Banner*, 503 F.Supp. 642, 646 (D.D.C.1980) ("It may well be desirable as a matter of policy to permit an individual to protest the grant of a patent other than by an infringement action, ... that is a decision for the Congress.").

9. The Federal Circuit held that the Patent Statute did not preclude judicial review in *Ethicon*, because *Ethicon* involved a third-party's right to a timely reexamination proceeding, not a third-party's effort to challenge a PTO decision to grant a reexamination certificate or patent. The Patent Statute does not specify who may seek judicial review of the PTO's stay of a reexamination proceeding, but it does specify who may seek judicial review of the PTO's decision to grant a reexamination certificate, 35 U.S.C. § 306, and who may seek judicial review of the PTO's decision to grant a patent or reissue patent. 35 U.S.C. §§ 141, 145. In *Syntex*, the court

Like third-party reexamination requesters, third parties protesting reissue applications have only limited rights to participate in PTO proceedings. *See* 35 U.S.C. §§ 302–306;[10] *Yuasa*, 3 U.S.P.Q.2d (BNA) 1143, 1987 WL 9519. Although PTO rules authorize third parties to file protests against reissue applications, 37 C.F.R. § 1.56(h), the rules explicitly confine the participation of third parties in reissue proceedings to the filing of protests. 37 C.F.R. § 1.291.[11] This PTO regulation implementing the Patent Statute's intent to limit third-party involvement in the patent examination process is entitled to judicial deference. *See United States v. City of Fulton*, 475 U.S. 657, 666, 106 S.Ct. 1422, 1427, 89 L.Ed.2d 661 (1986); *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Plaintiff maintains that this suit is only an action to review the procedure used by the PTO in its consideration of Allied's reissue application, not an action to review the validity or enforceability of Allied's reissue patent.[12] However, plaintiff's distinction is a superficial one. Plaintiff's suit is precluded by the Patent Statute, because plaintiff's action, a suit brought by a third-party protestor, seeks to overturn the PTO's decision to grant a reissue patent to Allied. Although plaintiff states *"that plaintiff does not here seek a determination of the validity or enforceability of the patent,"* in the same memorandum plaintiff also requests an injunction requiring Allied to surrender its reissue patent. (Plaintiff's Memorandum at 10, 31–32 (emphasis in original).) Furthermore, the ultimate source of Hitachi's alleged injuries is not the alleged procedural violation by the Commissioner, but the existence of Allied's reissue patent. The threat of another infringement suit by Allied, and the commercial detriment plaintiff allegedly is suffering due to the appearance that Allied has valid patent protection are injuries that "flow ... from the existence of the patent" issued by the PTO. *Syntex*, 882 F.2d at 1575; *see also Heckler v. Ringer*, 466 U.S. 602, 614, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984) (denying APA jurisdiction, because claimants' allegedly procedural claim sought the benefits conferred through the precluded action).[13] Based on Hitachi's requested relief and the source of Hitachi's alleged injuries, Hitachi's claims that it does not "seek, directly or indirectly, a determination of patent invalidity or enforceability," are unpersuasive. (Plaintiff's Memorandum at 14.)

■ "[T]he existence of other remedies to ensure the realization of the ... objec-

distinguished *Ethicon*, explaining that *Ethicon* "involved a right to have reexamination conducted ... [not] a purported right to have a reexamination decision set aside.... [In *Ethicon*] [t]his court was required to fill in a statutory gap. In contrast, the [patent] statute provides for review of the reexamination decision [at issue in *Syntex*] and expressly limits such review." *Syntex*, 882 F.2d at 1574.

10. Although 35 U.S.C. § 302 grants reexamination requesters limited rights to participate in the reexamination process, 35 U.S.C. § 305 provides that following this participation, reexamination proceeds under the initial *ex parte* examination procedures prescribed by 35 U.S.C. §§ 132 and 133. Furthermore, 35 U.S.C. § 306 authorizes only the patent owner to seek administrative and judicial review of reexamination decisions.

11. 37 C.F.R. § 1.291 provides that "[t]he active participation of the member of the public filing a protest ... ends with the filing of the protest...."

12. Plaintiff "grant[s], at least for purposes of argument, that plaintiff here could not obtain a determination of patent validity or enforceability in an APA review action against the Commissioner." (Plaintiff's Memorandum at 15.)

13. In *Heckler*, the Court held that it did not have subject matter jurisdiction over the "procedural" claims brought by medicare claimants, because the Medicare Act, 42 U.S.C. § 405(g), required that administrative remedies be exhausted prior to judicial review of any claims "arising" under the Act. The Court classified plaintiffs' procedural claims as claims arising under the Medicare Act, because they were "inextricably intertwined with respondents' claims for benefits." The Court rejected the "separation of the particular claims here into 'substantive' and 'procedural' elements," because "the relief that respondents seek to redress their supposed 'procedural' objections is the invalidation of the Secretary's current policy and a 'substantive' declaration from her that the expenses of BCRB surgery are reimbursable under the Medicare Act." *Heckler*, 466 U.S. at 614, 104 S.Ct. at 2021.

tives" of the patent laws and regulations to be implemented by the PTO confirms this Court's determination that PTO decisions on patent grants are not subject to judicial review at the behest of third parties, regardless of whether the challenge is characterized as procedural or substantive. *Morris*, 432 U.S. at 505–507, 97 S.Ct. at 2420–2423. The availability of other more appropriate remedies also indicates that the PTO's rejection of plaintiff's protest is not covered by the APA, as it is not "a final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The PTO's adherence to procedural and substantive requirements in its examination process can be checked by third parties, but only in the manner authorized by Congress. *See Syntex*, 882 F.2d at 1576.[14]

Instead of providing third-party protestors with the right to judicial review of examination proceedings, Congress authorized them to raise allegations of patent invalidity as a defense to an infringement action. Thus, if Allied were to bring another infringement suit against Hitachi, Hitachi could challenge the validity and enforceability of the reissue patent on the basis of its allegations of inequitable conduct. 35 U.S.C. § 282; *see Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Hitachi also is authorized to bring a declaratory judgment action against Allied, should Allied subject Hitachi to threats of an infringement suit. 28 U.S.C. § 2201; *see Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988).[15] In light of the remedies capable of redressing Hitachi's poten-

tially substantive injuries and the overall statutory scheme governing patent examination and issuance, the Court concludes that Hitachi's cause of action is precluded by the Patent Statute and that, even if it were not precluded, the action would not be subject to review under the APA because "adequate" remedies otherwise are available in court. Consequently, the Court lacks subject matter jurisdiction to consider plaintiff's suit with respect either to the defendant Commissioner or the intervenor Allied.

## II. Standing.

Even if the Court had subject matter jurisdiction over plaintiff's suit, and the suit were reviewable under the APA, the Court would dismiss plaintiff's claims due to plaintiff's failure to satisfy the constitutional and prudential requirements for standing. Plaintiff asserts standing based on three alleged injuries: the PTO's alleged violation of plaintiff's purported right to have its protest against Allied's reissue application investigated pursuant to 37 C.F.R. § 1.56 and 35 U.S.C. § 251, the threat of another infringement suit by Allied, and the commercial detriment plaintiff allegedly is suffering due to the appearance that Allied has valid patent protection. However, the Court concludes that plaintiff's assertions are invalid and that plaintiff lacks standing, due to the insufficiency of its alleged injuries.

To achieve standing, plaintiff must satisfy both the case and controversy requirements of Article III, *Simon v. Eastern Kentucky Welfare Rights Org.*, 426

---

**14.** In *Syntex*, the Federal Circuit concluded that:

[i]n sum, every perceived injury caused by improper agency action does not carry a right to immediate judicial redress. A right to immediate judicial review must be granted or reasonably inferred from a particular statute. For example, a potential infringer may not sue the PTO seeking retraction of a patent issued to another by reason of its improper allowance by the PTO. A remedy must await confrontation with the patent owner. The same is true with respect to a reissued patent. Although a third-party requester has some

rights vis-a-vis the PTO, from our review of the entirety of the reexamination provisions, we conclude that such a requester has no right to challenge the validity of the Reexamination Certificate by suit against the PTO. *Syntex*, 882 F.2d at 1576.

**15.** The court there held that plaintiff's suit seeking a declaratory judgment of invalidity, unenforceability, and noninfringement of defendant's patent constituted an actual controversy over which the court had jurisdiction. *Arrowhead*, 846 F.2d at 736.

U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976), and certain prudential requirements, *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982). Article III requires plaintiff to allege an actual or threatened injury which is sufficient "to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). The alleged injury must also be "distinct and palpable" to the plaintiff, causally related to defendant's challenged actions, *Warth*, 422 U.S. at 501, 507–508, 95 S.Ct. at 2206, 2209–2210, and "likely to be redressed" by the requested relief, *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924. *See Gladstone v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

■ The alleged injury to plaintiff's procedural right does not constitute an actual or threatened injury. "[T]he standing and reviewability inquiries [in this case] tend to merge." *Banzhaf v. Smith*, 737 F.2d 1167, 1170 n. * (D.C.Cir.1984) (en banc); *see Syntex*, 882 F.2d at 1575. As the Ninth Circuit stated in *Dellums*, "[b]ecause we conclude that Congress intended to preclude review at the behest of … [third-party protestors], we necessarily also conclude that Congress did not intend to create procedural rights in … [third-party protestors] sufficient to support standing to sue." *Dellums*, 797 F.2d at 823. In fact, as noted above, participation by protestors in the examination process is explicitly limited to the right to file a protest. 37 C.F.R. § 1.291. Consequently, this alleged injury to plaintiff's procedural "rights" cannot

satisfy the injury-in-fact requirement of Article III. *See Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; *Boeing Co. v. Commissioner of Patents and Trademarks*, 853 F.2d 878, 880 (Fed.Cir.1988).[16] Plaintiff's claim to a "right to expect that the Commissioner would conduct [an] examination of Allied's violation of the duty of disclosure" based on 37 C.F.R. § 1.56 and the contents of plaintiff's protests is unfounded. (*See* Plaintiff's Memorandum at 4–5.) Members of the public do not have such a right, and neither the regulation nor the Patent Statute confer this procedural right on third-party protestors.[17]

■ The other injuries alleged by Hitachi, the threat of another infringement suit and the commercial detriment caused by the fact that Allied appears to have patent protection, do not constitute a basis for standing, because they cannot "fairly … be traced" to the Commissioner's alleged procedural violations and because they are not "likely to be redressed" by plaintiff's requested relief. *Simon*, 426 U.S. at 38, 41, 96 S.Ct. at 1924, 1925. These alleged injuries "flow, as in *Boeing*, from the existence of the [original and reissue] patent[s]" granted by the PTO, not from the PTO's investigation or lack of investigation into Hitachi's allegations of inequitable conduct. *Syntex*, 882 F.2d at 1575 (citing *Boeing*, 853 F.2d 878). The source of these alleged injuries not only supports the Court's determination that Hitachi's cause of action is precluded by the Patent Statute, but also confirms Hitachi's lack of standing. Furthermore, the threat of an infringement suit and the commercial detriment produced by Allied's patent are not "redressable" by the Court. *Simon*, 426 U.S. at 39, 96 S.Ct. at 1924. "[I]t is pure speculation that," were the reissue proceeding to be

---

16. Boeing appealed an adverse reexamination decision, and the third-party reexamination requester was permitted to intervene. However, when the court later granted motions by Boeing and the Commissioner to remand the proceeding for a new reexamination, the court held that the third-party reexamination requester did not have standing to appeal the remand order.

17. *See McKinney v. United States Dep't of Treasury*, 799 F.2d 1544, 1550 (Fed.Cir.1986), (citing *Allen v. Wright*, 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984)) ("The mere assertion of a right to have the Government act in accordance with the law is not sufficient, in and of itself, to satisfy the injury requirement.").

"properly" conducted, Allied's reissue patent would not be granted and Hitachi's "alleged 'injuries' [would] thereby [be] alleviated." *Syntex*, 882 F.2d at 1575.[18]

■■■ Finally, Hitachi's claims also fail to meet the prudential requirements for standing. Prudential considerations dictate that a plaintiff's claims must fall within the "zone of interests" protected by the rule or statute under which a plaintiff alleges a cause of action. *Valley Forge*, 454 U.S. at 475, 102 S.Ct. at 760, (quoting *Data Processing*, 397 U.S. at 153, 90 S.Ct. at 830).[19] Hitachi's claims as a third-party protestor, as a competitor, and as a potential target of an infringement suit do not fall within the "zone of interests" protected by the relevant statute or the implementing regulations. Plaintiff's claims are not within the "zone of interests" protected by 37 C.F.R. § 1.56 because plaintiff is not a patent applicant. Section 1.56 addresses itself to patent applicants, prescribing the manner in which reissue applications will be handled by the PTO and detailing the duty of disclosure imposed on reissue applicants.[20] Although paragraph (h) authorizes members of the public to file protests against reissue applications on the grounds of inequitable conduct, participation by protesters is limited by 37 C.F.R. § 1.291.

Similarly, plaintiff's claims are not within the "zone of interests" protected by 35 U.S.C. § 251, because plaintiff is not a patent owner. Section 251 of Title 35 authorizes patent owners seeking to correct "errors" in their original patent claims to apply for a reissue patent. The provision contains no reference whatsoever to third parties and stipulates that the *ex parte* process governing the original examination and issuance process also should be employed in the examination of reissue applications. 35 U.S.C. § 251; *see also Williams Mfg.*, 121 F.2d at 277; *Godtfredsen*, 503 F.Supp. at 646. Plaintiff fails to meet the constitutional and prudential requirements for standing which would permit it to bring this cause of action against either the Commissioner or Allied. Due to plaintiff's lack of standing, the Court would be compelled to dismiss plaintiff's claims even if the Court did not lack subject matter jurisdiction over the suit.

### *Conclusion*

This Court grants the motions to dismiss filed by the defendant and the intervenor, because it lacks subject matter jurisdiction and because plaintiff lacks standing. The comprehensive statutory scheme governing patent grants reveals Congress's intent to preclude Hitachi and other third-party protestors from seeking judicial review of PTO decisions to grant original and reissue patents. Congress did not, however, leave third parties faced with or threatened by a patent infringement suit without an adequate remedy in court. Instead, Congress explicitly authorized third parties in these circumstances to challenge the validity and enforceability of the patent or reissue patent in question by raising the defenses of patent invalidity or unenforceability to a patent infringement suit or by *initiating* a declaratory judgment action against the

---

**18.** Hitachi, however, does have adequate remedies in court for these injuries. Although Congress precluded third-party protestors from seeking judicial review of PTO decisions, Congress explicitly provided for the redress of injuries such as those alleged by Hitachi by authorizing targets of infringement suits to raise the defense of patent invalidity in any infringement action brought against them or to bring an action for declaratory judgment against patent owners threatening them with an infringement suit. 35 U.S.C. § 282.

**19.** The Court in *Data Processing* interpreted the APA, 5 U.S.C. § 702, to require that plaintiffs seeking judicial review demonstrate: (1) that they have suffered an injury in fact, and (2) that they fall "within the zone of interests to be protected or regulated by the statute." *Data Processing*, 397 U.S. at 153, 90 S.Ct. at 830. Based on these standards, the Court held that data processors have standing to challenge rulings by the Comptroller of the Currency under the National Bank Act and the Bank Service Corporation Act. *Id.* at 153–57, 90 S.Ct. at 829–32.

**20.** More specifically, paragraphs (d), (e), and (h) of Rule 1.56 outline the process for handling applications in cases involving allegations of inequitable conduct. 37 C.F.R. § 1.56.

party threatening an infringement suit.[21]

---

**21.** The conclusion that Congress intended to preclude third-party protestors from seeking judicial review of PTO patent decisions precludes any intimation as to the merits of plaintiff's substantive claims regarding the Commissioner's alleged procedural violations or the validity and enforceability of Allied's reissue patent.