**HALLMARK CARDS, INC., Plaintiff,**

v.

**Bruce A. LEHMAN, Assistant Secretary of Commerce and Commissioner of Patents and Trademarks, Defendant,**

and

**James River Corporation of Virginia, Intervenor–Defendant.**

**Civil Action No. 95–318 SSH.**

United States District Court, District of Columbia.

Feb. 21, 1997.

**540**

Herman A. Manuel, Edward W. Gray, Jr., Gray, Manuel & Lafalce, Washington, DC, for Plaintiff.

James T. Carmichael, Joseph G. Piccolo, Nancy J. Linck, Albin F. Drost, U.S. Patent & Trademark Office, Associate Solicitors, Arlington, VA, for Defendant.

Kathleen Ann Buck, Kirkland & Ellis, Washington, DC, for Intervenor-Defendant.

STANLEY S. HARRIS, District Judge.

The following pleadings now are before the Court:

1. Defendant's Motion for Summary Judgment;

2. Plaintiff's Cross–Motion for Summary Judgment;

3. Plaintiff's Statement of Objections to the Commissioner's Statement of Material Facts as to Which There is No Genuine Issue and Plaintiff's Statement of Facts to Which There is No Genuine Issue in Support of Hallmark's Cross–Motion for Summary Judgment;

4. Intervenor's Memorandum of Points and Authorities in Support of the Defendant's Motion for Summary Judgment (hereinafter "Intervenor's Motion To Dismiss");

5. Plaintiff's Memorandum in Opposition to Intervenor's Memorandum in Support of the Commissioner's Motion for Summary Judgment (hereinafter "Opposition to Intervenor's Motion to Dismiss");

6. Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment;

7. Intervenor's Memorandum of Points and Authorities in Opposition to Plaintiff's Cross–Motion for Summary Judgment;

8. Intervenor's Statement of Objections to Plaintiff's Statement of Facts to Which There is No Genuine Issue in Support of Plaintiff's Cross–Motion for Summary Judgment;

9. Intervenor's Reply to Plaintiff's Opposition to Intervenor's Memorandum in Support of the Defendant;

10. Plaintiff's Reply in Support of its Cross–Motion for Summary Judgment; and

11. Plaintiff's Response to Intervenor's Reply to Plaintiff's Opposition to Intervenor's Memorandum in Support of the Defendant.

 Upon consideration of the entire record, the Court grants intervenor's motion

to dismiss.[1] Although "findings of fact and conclusions of law are unnecessary in decisions of motions under Rule 12," Fed R. Civ. P. 52(a), the Court nonetheless sets forth its reasoning.

## BACKGROUND

Plaintiff, Hallmark Cards, Inc., brought this action seeking reversal of a decision by defendant, the Commissioner of Patents and Trademarks (the "PTO"), to issue Certificates of Correction (the "Certificates") for United States Patents No. 4,721,499 (the " '499 patent") and 4,721,500 (the " '500 patent").

This action involves a challenge to a series of patents held by intervenor, James River Corporation of Virginia ("James River"). In November 1993, James River, the owner of the '500 and '499 patents, sued Hallmark in the United States District Court for the Eastern District of Wisconsin, charging, *inter alia*, that Hallmark infringed upon the '500 and '499 patents. *See James River Corp. of Virginia v. Hallmark Cards, Inc.*, No. 93–C–1330 (E.D.Wis. Mar.17, 1995). In its first motion for summary judgment, Hallmark claimed that the patents were invalid based on James River's public use of the '500 and '499 patents more than one year prior to their stated filing dates in violation of 35 U.S.C. § 102(b).[2] James River responded by stating that any failure on its part to make the necessary "specific references" in the '500 and '499 applications was a technical-ity that could, if necessary, be remedied through the issuance of a Certificate of Correction by the PTO under 35 U.S.C. § 255. By its request for Certificates of Correction, James River sought to amend the '499 patent to change its effective filing date by adding a specific reference to an earlier-filed 1984 application and to amend the '500 patent to change its effective filing date by adding a specific reference to an earlier-filed 1984 application and to an earlier-filed 1982 patent application.[3]

Hallmark submitted a letter to the PTO opposing James River's requests for Certificates of Correction. Before the Wisconsin court issued judgment on the validity of the patent, the Commissioner issued the requested Certificates of Correction. The Certificates of Correction had the effect of validating James River's patents. Hallmark then filed a petition under 37 C.F.R. § 1.182 urging reversal of the decision to issue the Certificates. The PTO denied the petition, and Hallmark filed this action against the Commissioner of the PTO requesting that the Certificates be ordered withdrawn. Hallmark also filed a motion with the Wisconsin court asking that court to stay its resolution of that action pending resolution of this case. The Wisconsin court denied both the motion to stay and the motion for summary judgment. The court observed that if the Commissioner's issuance of the Certificates were overturned, Hallmark could apply for relief

1. Defendant did not move to dismiss this action. However, an intervenor may move to dismiss a proceeding. *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). The intervenor is to be treated as if it were an original party to the claim once the intervention has been allowed. 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1920 (1986); *Gilbert v. Johnson*, 601 F.2d 761, 768 (5th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Even if the case could not be dismissed pursuant to intervenor's motion, the Court would *sua sponte* dismiss it for lack of subject matter jurisdiction. *See* Fed R. Civ. P. 12(b)(1), 12(h)(3).

2. 35 U.S.C. § 102(b) provides that a person shall be entitled to a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

3. 35 U.S.C. § 120 provides that "an application for a patent previously filed in the United States ... by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application."

If the patent is in public use or on sale in this county for more than one year prior to the date of application, then the "on sale bar" prevents the issuance of the patent. 35 U.S.C. § 102(b). Therefore, by referring to the earlier date, intervenor avoids the "on sale bar."

under Federal Rules of Civil Procedure 50, 59, or 60. The Wisconsin court considered Hallmark's second motion for summary judgment in a separate opinion.[4] *See James River Corp. of Virginia v. Hallmark Cards. Inc.*, 915 F.Supp. 968 (E.D.Wis.1996). The Wisconsin court again denied Hallmark's motion for summary judgment and held that the patents were not invalid under the statutory "on sale bar." *Id.* The court found that the Certificates, which had been issued pursuant to 35 U.S.C. § 255, corrected the patentee's alleged mistakes of failing to make the specific reference to the grandparent application of the '499 patent and the specific reference to the grandparent and great-grandparent application of the '500 patent, as required by § 120 of the Patent Act.

At issue in the predecessor infringement action and the case before this Court is the 'date of application' of the '500 and the '499 patents. The '500 patent was filed on June 3, 1986, and contained a specific reference to application Set. No. 764,965, which was filed on August 12, 1985. Thus, the "date of the application" of the '500 patent is, at the latest, August 12, 1985. The parties disagree about whether the '500 patent also includes a "specific reference" to two earlier applications. If the '500 patent is entitled to the benefit of the two earlier application dates, its effective "date of application" would move back to April 13, 1982. It is undisputed that the '500 patent was "in public use" in October 1981. As a result, whether the patent is valid under 35 U.S.C. § 102(b) depends on whether the patent is entitled to the benefit of the earlier application filing dates.

The situation is similar with regard to the '499 patent. The application for that patent was filed on June 3, 1986, and contained a specific reference to application Set. No. 777,873, which was filed on September 20, 1985. It is thus undisputed that the patent's "date of application" is, at the latest, September 20, 1985. It has also been determined that the t499 patent was "in public use" in November 1983. Pursuant to 35 U.S.C. § 102(b), the '499 patent is invalid unless it is entitled to the benefit of the application date of an earlier filing on March 20, 1984.

## DISCUSSION

In considering a motion to dismiss, the Court takes plaintiff's factual allegations as true. *Maljack Productions, Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995). However, the Court need not accept legal conclusions that are presented as factual allegations. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

## I. *Subject Matter Jurisdiction*

■ Plaintiff asserts that this Court has jurisdiction to review the PTO's decision to issue Certificates of Correction under 28 U.S.C. § 1338(a) and 35 U.S.C. §§ 6, 255. The Court disagrees. The Court lacks subject matter jurisdiction over plaintiff's claims and must, therefore, dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1). Sections 6 and 255 do not refer to any right of judicial review. While § 1338(a) grants to federal district courts exclusive jurisdiction over civil actions "arising under" any federal statute relating to patents, that section does not create any right of civil action in the first instance. The test for determining whether a right of action exists was set forth in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Aerojet–General Corp. v. Machine Tool Works*, 895 F.2d 736, 741 (Fed.Cir.1990).

■ Under *Christianson*, jurisdiction under § 1338(a) extends only to those cases in which (1) a well-pleaded complaint establishes either that federal patent law creates the cause of action, or (2) plaintiff's right to relief necessarily depends upon resolution of a substantial question of federal patent law,

---

**4.** Hallmark moved for summary judgment on the grounds of laches, estoppel, and infringement, and for partial summary judgment on the ground of invalidity. The court held that (1) the action was not barred by laches; (2) the infringement claim was not barred by estoppel; (3) the evidence raised genuine issues of material fact as to whether patents were infringed either literally or under doctrine of equivalents, which precluded summary judgment; and (4) the patents were not invalid under the statutory on sale bar. *Id.* at 968.

in that the patent law is a necessary element of one of the well-pleaded claims. 486 U.S. at 808–10, 108 S.Ct. at 2174. Plaintiff asserts that it meets the second prong of the *Christianson* test. However, plaintiff neglects an overriding principle of statutory analysis: the presumption favoring judicial review of administrative action is overcome when the statutory framework enacted by Congress implicitly precludes a right to the relief sought. *Hitachi Metals, Ltd. v. Quigg,* 776 F.Supp. 3, 7–8 (D.D.C.1991). In the instant action, the Congressional framework precludes the right of third parties to file a civil action in the case of the issuance of a Certificate of Correction; the third party's recourse for the alleged errors made by the PTO is to raise the issue as a defense in an infringement suit.[5]

This Court stated in *Hitachi Metals* that "the Patent Statute is addressed to patent owners and patent applicants." 776 F.Supp. at 8. The Court went on to state that "the patent examination process is an *ex parte* proceeding, not an adversarial one, and ... the Patent Statute's judicial review provisions contain no gaps requiring the Court to exercise its power." *Id.* The Court found that Congress intended to preclude judicial review of PTO examination decisions at the behest of third parties. *Id.* at 7.

Plaintiff contends that *Hitachi* is inapplicable to this action because we are faced with a challenge to the issuance of a Certificate of Correction rather than with a challenge to an examination decision.[6] The Court finds that reissue and reexamination proceedings and issuances of Certificates of Correction have many similarities and should therefore be treated similarly with respect to judicial review. First, all three provisions are located within Title 35, Chapter 25 of the United States Code. Second, the Patent Statute makes clear that the effect of a reissued patent, a reexamined patent, and a patent for which a Certificate of Correction has been granted are the same: all have the full force and effect of the original issued patent. Additionally, all three proceedings are conducted, with limited exceptions, *ex parte* in the PTO. Since the three types of proceedings are so similar in their purpose and effect, logic dictates the conclusion that Congress intended the same framework for judicial review to apply under all three provisions.

Moreover, it would strain credulity to conclude that Congress did not provide for judicial review by third parties of PTO decisions when the PTO conducts a thorough and comprehensive review of a patent in reissue and reexamination proceedings, but intended that third parties have the right to judicial review when the PTO issues Certificates of Correction, which involves a far less intrusive examination of a patent for minor, typographical, and clerical errors.

Plaintiff urges that the provisions should be interpreted differently on the issue of availability of judicial review. The reexamination and reissue sections of the Patent Statute are comprehensive and implicitly preclude judicial review. *Hitachi Metals,* 776 F.Supp. at 8. In contrast, the Certificate of Correction section of the Patent Statute is more general and completely silent on the issue of judicial review. Participation by third parties in reissue proceedings is limited to the protest provision, from which there is no appeal. 37 C.F.R. § 1.291. Participation in reexamination proceedings is limited to a request for reexamination and a reply to the

---

5. Hallmark raised the defense of improper issuance of Certificates of Correction by the PTO in the infringement action brought by James River. *James River Corp. of Virginia v. Hallmark Cards, Inc.,* No. 93–C–1330 (E.D.Wis. Mar.17, 1995). Ultimately, the Wisconsin court denied Hallmark's motion for summary judgment on the issue of whether the patents had been infringed and held that the patents were not invalid under the statutory on sale bar. *Id.; James River Corp. of Virginia v. Hallmark Cards,* 915 F.Supp. 968 (E.D.Wis.1996).

6. Plaintiff and intervenor disagree on the distinction between an examination decision and a Certificate of Correction. Both parties agree that an examination decision includes reissue proceedings, 35 U.S.C. § 251, and reexamination proceedings, 35 U.S.C. §§ 302 and 306. However, plaintiff asserts that an examination decision, as opposed to a Certificate of Correction, involves a thorough review of non-minor mistakes of a pending patent. Intervenor, on the other hand, claims that the distinction between examination decisions and Certificates of correction is "contrived and unsupportable" in the present case. Intervenor's Reply at 5.

patent owner's statement. 37 C.F.R. §§ 1.510, 1.535. The requester may not actively participate further and may not appeal. 37 C.F.R. § 1.550(e); *Syntex (U.S.A.) Inc. v. U.S. PTO,* 882 F.2d 1570 (Fed.Cir.1989).

■ To assume, nevertheless, that Congress intended to grant third party requesters a right to judicial review of the PTO's final reexamination and reissue decisions appears wholly unwarranted in light of these provisions. *See Hitachi Metals,* 776 F.Supp. at 8; *Syntex,* 882 F.2d at 1574. The creation of a right in a third party to challenge a result favorable to a patent owner after *ex parte* prosecution would be unprecedented and such a right cannot be inferred. *Syntex,* 882 F.2d at 1575 (citation omitted). The PTO regulations do not expressly provide for any participation by third parties in requests for Certificates of Correction. *See* 37 C.F.R. §§ 1.322–323. It therefore is concluded that Congress did not intend that third parties have the right to judicial review of Certificates of Correction issued by the PTO.[7]

II. *Standing*

Even if the Court had subject matter jurisdiction, the Court would nonetheless dismiss it because of plaintiff's failure to satisfy the constitutional requirements of standing. A case is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff lacks standing to bring the action. 5A Wright & Miller, *Federal Practice and Procedure* § 1360 (1990). Under a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted, the Court will consider only matters presented within the pleadings.

■ There are three elements that compose the "irreducible constitutional minimum of standing" that a plaintiff must establish in order to bring suit. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Plaintiff

must have (1) suffered an "injury in fact"— an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical' "; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court"; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*

Plaintiff clearly satisfies the first element of *Lujan.* Plaintiff has suffered an injury that is concrete, particularized, and actual, since it has been made subject to a patent infringement suit by intervenor. *See James River Corp. of Virginia v. Hallmark Cards Inc.,* No. 93–C–1330 (E.D.Wis. Mar.17, 1995).

■ The second element of *Lujan* requires a causal connection between the injury and the conduct. 504 U.S. at 559–61, 112 S.Ct. at 2136. Plaintiff claims that as a result of defendant's decision to improperly issue the Certificates of Correction, it suffered an injury, since it has now been subjected to intervenor's claims of infringement of patents which should have been held invalid. However, plaintiff's injuries flowed from the existence of the original and reissue patents granted by the PTO, rather than from the PTO's investigation or lack of investigation into defendant's allegations of inequitable conduct. *Hitachi,* 776 F.Supp. at 11. Furthermore, a potential infringer may not sue the PTO seeking retraction of a patent issued to another by reason of its improper allowance by the PTO; a remedy must await confrontation with the patent owner. *Syntex,* 882 F.2d at 1576. Plaintiff's injury was a result of the original infringement by plaintiff of intervenor's patents and not of defendant's decision to issue the Certificates of Correction. Furthermore, it is irrelevant

---

**7.** Plaintiff advances, as an independent basis for subject matter jurisdiction, the Administrative Procedure Act (APA), which provides for the right of judicial review of an administrative decision such as that made by the PTO. However, the APA cannot, by itself, establish jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 104–08, 97 S.Ct.

980, 984–85, 51 L.Ed.2d 192 (1977). A plaintiff claiming injury under the APA must identify some other statute as the source of jurisdiction. *Id.* The jurisdictional inquiry under the APA is thus no different from the inquiry under the Patent Statute. Consequently, jurisdiction is not conferred by the APA.

that *Hitachi Metals* and *Syntex* concerned the mere threat of an infringement suit, as compared with the instant case, where plaintiff has already been subjected to an actual infringement suit by intervenor. The injuries in all three instances originated from the existence of the original patent granted by the PTO; consequently, plaintiff's injury was not caused by defendant's issuance of the Certificate of Correction.

Even if there were a causal connection, however, plaintiff would still be unable to satisfy the third requirement of the *Lujan* constitutional standing test: it must be reasonably likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. 504 U.S. at 559–61, 112 S.Ct. at 2136. It is pure speculation that, had the patent been "properly" reexamined, all claims would have been canceled and plaintiff's alleged injures thereby alleviated. *See Syntex,* 882 F.2d at 1575; *Hitachi Metals,* 776 F.Supp. at 11–12. In a predecessor case to the one before us, the court stated that if the Commissioner's decision to issue the Certificates was overturned, Hallmark "may apply" for relief under Federal Rules of Civil Procedure 50, 59, or 60. *James River Corp. v. Hallmark Cards, Inc.,* No. 93–C–1330 (E.D.Wis. Mar.17, 1995). Thus, reversal of defendant's decision would not automatically invalidate the patents, as plaintiff would still have to overcome the presumption that intervenor's patents are valid. 35 U.S.C. § 282. A final judgment of invalidity is not a foregone conclusion—plaintiff's claim that, but for the PTO's action, the patents would be invalid is too speculative to establish standing. In addition to the assumption of validity, intervenor would still be able to apply for a reissue proceeding to correct the patents. Therefore, due to plaintiff's lack of standing, the Court would be compelled to dismiss plaintiff's claims even if the Court did not lack subject matter jurisdiction over the suit.

## CONCLUSION

For the reasons stated, the Court grants intervenor's motion to dismiss on the grounds that the Court lacks subject matter jurisdiction and plaintiff lacks standing.

Because the Court dismisses this action, defendant's motion for summary judgment is denied as moot. An appropriate Judgment accompanies this Opinion.

## *JUDGMENT*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that intervenor's motion to dismiss is granted. It hereby further is

ORDERED, that defendant's motion for summary judgment is denied as moot.

SO ORDERED.