**MALJACK PRODUCTIONS, INC., Appellant,**

v.

**MOTION PICTURE ASSOCIATION OF AMERICA, INC., Appellee.**

No. 93–7244.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1995.

Decided April 28, 1995.

Robert B. Breisblatt, Chicago, IL, argued the cause for appellant. With him on the briefs were A. Sidney Katz, Julie A. Katz and Laurie A. Haynie, Chicago, IL.

Robert J. Shaughnessy, Washington, DC, argued the cause for appellee. With him on the brief was Richard M. Cooper, Washington, DC.

Before: EDWARDS, Chief Judge, WILLIAMS and ROGERS, Circuit Judges.

STEPHEN F. WILLIAMS, Circuit Judge:

Maljack, an independent movie and video production company, sued the industry's major trade association, the Motion Picture Association of America, for breach of contract. Maljack asserted that the Association's film-rating arm had discriminated against it because it was not a member of the Association. The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, holding that Maljack's asser- tions of discrimination—that its movie had received an "X" rating for violence, while more violent films produced by companies belonging to the Association had been given "R"s—were not adequate to allege a breach of the ratings contract. We reverse.

\* \* \*

Maljack is an Illinois corporation primarily engaged in distributing videocassettes to the home market. Its first major venture into the production of general-release films came in the mid–1980s, when it produced *Henry: Portrait of a Serial Killer*, a movie depicting, in documentary style, the life of a fictional serial murderer loosely based on a person on death row in Texas. Maljack concedes that *Henry* contains several explicit scenes of physical violence, including depictions of two rapes and several brutal murders.

The Motion Picture Association of America is a New York-incorporated trade association consisting of many of the largest American producers and distributors of television programs and motion pictures. Maljack is not a member. Among its other activities, the Association operates the Code and Rating Administration ("CARA"), located in California, which reviews movies prior to their release and evaluates their suitability for viewing by children. At the time of the events at issue, CARA rated movies either "G," "PG," "PG–13," "R," or "X"—with the exception of the last, all federally registered certification marks owned by the Association. Submission of a film to CARA is wholly voluntary, and producers are free to distribute movies without obtaining an Association rating.

In March 1988 Maljack submitted *Henry* to CARA for rating and paid a fee calibrated to the film's production costs. CARA gave *Henry* an "X" on grounds of its violence. That marked it, according to the Association's published general description of the rating, as having an "accumulation of brutal or sexually connected language, or of explicit sex or excessive and sadistic violence" that rendered it "patently an adult film." A representative of CARA explained that four sequences in the movie were particularly offensive and would have to be cut before CARA would even consider giving *Henry* an "R,"

the next most restrictive rating. Maljack refused to make the cuts and instead appealed the "X" rating to the Association's Classification and Rating Appeals Board. The Appeals Board affirmed the "X" rating.

In February 1989 Maljack surrendered the ratings certificate for *Henry* and chose instead to distribute the movie unrated. Maljack alleges that the picture was not as successful as it would have been if the Association had given *Henry* an "R": a substantial number of movie theaters will not show films that either are "X"-rated or lack a CARA rating altogether. Maljack maintains that the Association denied *Henry* an "R" rating because it was a small, independent production company that did not belong to the Association.

Maljack filed a two-count complaint against the Association in May 1990. Count I asked the court to cancel the Association's registered certification mark for the "R" rating on the grounds that the defendant applied its ratings in an illegally discriminatory fashion; the trial court dismissed this count on jurisdictional grounds, and Maljack does not appeal that ruling. Count II alleged that the Association's discrimination breached a covenant of good faith and fair dealing implied by law in CARA's agreement to rate *Henry* for a set fee. The district court also dismissed this count, holding that the complaint was devoid of non-conclusory factual allegations capable of supporting an inference that the Association had acted unfairly or in bad faith. Maljack moved to amend its complaint, but the district court denied leave to amend on the ground that the proposed amended complaint suffered from the same basic flaw.

Maljack now appeals both the dismissal of its original complaint and the denial of leave to amend. We need reach only the first issue.

\* \* \*

■ We review *de novo* the district court's dismissal of the complaint for failure to state a claim. See *Henthorn v. Department of Navy,* 29 F.3d 682, 684 (D.C.Cir. 1994). At this stage of the litigation the plaintiff's burden is relatively light. "[A]ll the [Federal Rules of Civil Procedure] re-

quire is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). We construe the complaint liberally in Maljack's favor, taking all the facts alleged as true, and giving Maljack the benefit of all reasonable inferences from those facts. See *Henthorn,* 29 F.3d at 683, 684; *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). At the same time, we are not to accept inferences drawn by Maljack if they are unsupported by the alleged facts, nor will we accept purely legal conclusions masquerading as factual allegations. See *Kowal,* 16 F.3d at 1276 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986)).

■ The parties and the district court have so far assumed that California law governs the rating agreement, and we will proceed on the same assumption. Cf. *Hull v. Eaton Corp.,* 825 F.2d 448, 453 n. 7 (D.C.Cir. 1987). Under California law, "all contracts contain an implied covenant of good faith and fair dealing [that] 'requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement,'" *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.,* 723 F.2d 700, 703 (9th Cir.1984) (quoting *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 695, 620 P.2d 141, 145 (1979)). A complaint alleging breach of this covenant must plead deliberate and conscious bad faith on the part of the defendant:

> [A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 272 Cal. Rptr. 387, 399–400 (1990).

If the Association deliberately gave *Henry* an "X" rating instead of an "R" because Maljack was not a member, it breached this implied covenant. The Association's assertion that Maljack "bargained to receive CARA's subjective judgment and nothing more" is inaccurate: as it stated in its complaint, Maljack reasonably expected that CARA would rate *Henry* in good faith based upon the content of the film alone and not the identity of its producer and that producer's links (or lack of links) to the Association. This expectation of fair dealing is protected under California law as if it were an explicit obligation of the contract.

■ The question, then, is whether the original complaint adequately alleged the sort of discrimination that would violate the implied covenant. Maljack pled the following:

- That it did not belong to the Association, Complaint ¶ 13,

- That although *Henry* contained some violent scenes, "the scenes were neither overly explicit or gory as compared to other films produced or released by members of the [Association] and given a "R" rating by the [Association]," *id.,*

- That because of the small ($1,100) rating fee paid by Maljack under CARA's production-cost-based sliding scale, CARA was aware that *Henry* was not a major-studio "big budget" film, *id.,* ¶ 15,

- That CARA gave *Henry* an "X" rating without ever explaining "why other films containing equal or greater violence and released by member companies of the [Association] had received an 'R' rating," *id.,* ¶ 20, and

- That the Association breached the covenant of good faith and fair dealing implied in the rating agreement "by rating [*Henry*] in a discriminatory manner when compared to other films it had given an 'R' rating to," *id.,* ¶ 32.

The Association objects to the conclusory tone of this last paragraph and faults Maljack for never stating explicitly that it was discriminated against because it did not belong to the Association. This is too stingy a reading of the complaint. The context makes clear the plaintiff's claim that the discrimination mentioned in the last paragraph flowed from Maljack's non-member status.

The Association's more serious objection is that the mere fact that *Henry* received an "X" while more violent films by member companies were rated "R" cannot logically support an inference that CARA acted with improper motive. It is true, as the Association points out, that the complaint would have been stronger if it had alleged that the rating criteria were biased against independent producers, or that CARA had a pattern of giving unwarranted "X" ratings to similar movies, or that the Association's member companies had a financial interest in sabotaging *Henry,* or that there was some direct communication from the Association indicating bad faith. But the absence of such confirming data does not nullify what *has* been alleged. Disparate treatment is the essence of all discrimination claims: at their core is always the assertion that the defendant has treated like cases differently on the basis of some impermissible criterion. And this is exactly what Maljack's complaint has alleged. The fact, which we must take as true, that the Association routinely assigned "R" ratings to member films more violent than *Henry* certainly suggests that it may have applied a different standard to *Henry* because of the identity of its producer. Later on, of course, at the summary judgment or trial phase of this litigation, it will not be easy for Maljack to show so skewed a ratings pattern as to support the inference necessary to meet California's quite demanding requirements for demonstrating bad faith, but federal pleading standards do not require the plaintiff to stuff its complaint with all of the details establishing the discrepancy. See *Conley v. Gibson,* 355 U.S. at 47–48, 78 S.Ct. at 102–03 (pointing to liberal discovery and other devices by which details of claim may be explored). This is especially true in a case where, as here, the alleged discriminator is applying rather broad and amorphous criteria (e.g., "excessive ... violence"), so

that countless details may be needed to support an inference of discrimination.

The Association effectively conceded at oral argument that this method of proof—comparing treatment in an individual case to the pattern of related decisions—is meaningful in this context. When asked to consider a hypothetical case in which a children's film like *Snow White* was given an "X" rating, Association counsel acknowledged that an observer could legitimately say something was amiss: *Snow White*'s "X" would be so out of line with CARA's other decisions as to raise a compelling inference of something more than a simple judgment error or difference of opinion. Such logic is no different from that contained in Maljack's complaint. Henry the Serial Killer may be no Snow White (nor even her wicked stepmother), but the degree of difference is a question of fact, and we must now take the facts to be as Maljack alleges.

We therefore reverse the district court's order dismissing the original complaint and remand the case for further proceedings.

*So ordered.*