**THOMAS & BETTS CORPORATION and Thomas & Betts Holdings, Inc., Plaintiffs,**

v.

**PANDUIT CORPORATION, Defendant.**

No. 94 C 2656.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 17, 1996.

---

Sidney David, Keith E. Gilman, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, Marc L. Fogelberg, McBride, Baker & Coles, Chicago, IL, James Hay, Lewis & McKenna, Saddle River, NJ, for Plaintiffs.

David C. Hilliard, John Thompson Brown, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiffs Thomas & Betts Corporation and Thomas & Betts Holdings, Inc. (hereinafter collectively referred to as "T & B"), bring this action in five counts against defendant Panduit Corporation (hereinafter "Panduit"). On August 15, 1996 this Court granted Panduit's motion for summary judgment as to four counts and reserved ruling on count II. Count II alleges that Panduit's use of the trademark BARB–TY constitutes a misleading use under 15 U.S.C. § 1125(a)(1) and seeks cancellation of Panduit's trademark registration of the BARB–TY mark under 15 U.S.C. § 1064(3) on the grounds that it is generic. This Court conducted oral argument on September 11, 1996 and accepted additional briefing on count II. For the reasons set forth below the Court grants Panduit's motion for summary judgment as to count II.

### I. BACKGROUND FACTS

The Court has previously discussed the facts in its August 15, 1996 decision granting summary judgment on all counts other than count II. *See Thomas & Betts Corp. and Thomas & Betts Holdings, Inc. v. Panduit Corp.*, 935 F.Supp. 1399 (N.D.Ill.1996). A brief discussion of the facts relevant to count II follows. Both parties sell a variety of cable ties. In 1965, T & B obtained a patent on the two-piece cable tie ("the Schwester patent"). That patent disclosed a two-piece cable tie with an oval head, metal barb and transverse slot. T & B marketed its patented two-piece cable tie under the trademark TY–RAP. Though the Schwester patent expired in 1982 and a related patent also held by T & B expired in 1986, until 1993 T & B remained the sole producer of two-piece cable ties with annual sales of almost $100 million worldwide which it marketed under the TY–RAP trademark.

In 1993, Panduit entered the two-piece cable tie market with the BARB–TY, an oval-headed, metal-barbed cable tie essentially identical to T & B's TY–RAP. BARB–TY is a registered trademark. T & B claims that Panduit's use of the trademark BARB–TY constitutes a misleading use and violates § 43(a)(1) of the Lanham Act. Also, T & B requests that Panduit's trademark be canceled pursuant to § 14 of the Lanham Act because of either the genericness of the term "barb tie" or the fraudulent procurement of the BARB–TY mark.

### II. SUMMARY JUDGMENT STANDARD

The Court will apply the summary judgment standard set forth in section II of its August 15, 1996 decision.

### III. PANDUIT'S USE OF THE TERM BARB–TY DOES NOT VIOLATE THE LANHAM ACT

Panduit's use of the term BARB–TY does not violate § 43(a)(1) of the Lanham Act as a matter of law because the term "barb tie" is not generic and the BARB–TY trademark does not create confusion as to source.

#### A. The Statute

T & B alleges that Panduit's use of the trademark BARB–TY is a violation of Section 43(a) of the Lanham Act. That section provides that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

The Supreme Court explained the protection afforded by Section 43(a)(1) in *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S.

169, 187, 16 S.Ct. 1002, 1009, 41 L.Ed. 118 (1896):

> It is obvious that if the name ... has a two-fold significance, one generic and the other pointing to the origin of manufacture, and the name is availed of by another without clearly indicating that the machine upon which the name is marked is made by him, then the right to use the name because of its generic signification would imply a power to destroy any good will which belonged to the original maker. It would import, not only this, but also the unrestrained right to deceive and defraud the public by so using the name as to delude them into believing that the machine made by one person was made by another.

Thus, where a particular term is deemed to have a "two-fold significance", courts are required to protect the investment of the prior user and protect the public from confusion by requiring subsequent users to take appropriate measures to prevent a likelihood of confusion from occurring.

■ Section 43(a)(1) of the Lanham Act prohibits the misleading use of a term which has both a source identifying quality and a generic quality. *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035 (D.C.Cir.1989). The source indicating quality results from the fact that there existed only a single manufacturer of a particular product over a long period of time, such that the relevant public has come to associate the term used to denote the product with that manufacturer. The generic quality stems from the common use of a term as the descriptor for a product. T & B argues that the term "barb tie" possesses a source indicating quality as to T & B and generically describes the cable ties which are sold by both parties.

**B. Barb Tie Is Not a Generic Term**

■ T & B argues that the term "barb tie" and the phonetic equivalent BARB–TY trademark, possess a generic quality and are likely to cause confusion among consumers. Marks are classified into five categories of generally increasing distinctiveness: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68, 112

S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). In general, the level of trademark protection increases with the distinctiveness of the mark. Thus, generic terms receive no protection, descriptive marks are protected only if the mark has acquired secondary meaning, and suggestive, arbitrary, and fanciful marks are deemed inherently distinctive and are automatically entitled to full protection. *Id.*

■ The issue before the Court is whether the trademark BARB–TY denotes the product or a particular brand of the product. *Id.* "This is a question fact, (citations omitted) but as with any question of fact can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996).

If a trademark is federally registered, there is a presumption that the term is not generic and the defendant must overcome the presumption. *Bath & Body Works v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir.1996). Panduit registered ("BARB–TY") with the United States Patent & Trademark Office in 1994.

■ A generic term is one commonly used to denote a product or other item or entity, one that indicates the thing itself, rather than any particular feature or exemplification of it. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986). "Because a generic term denote[s] the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection even if it becomes associated with only one source." *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039 (D.C.Cir.1989). The test for genericness is whether the public perceives the term primarily as the designation of the article. *Id.* at 1041; J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 12:2 at 522–23.

Granting a generic term trademark protection would thwart the purposes of trademark law and violate fundamental concepts of fair competition. "[I]t is no purpose of trade-

mark protection to allow a firm to prevent its competitors from informing consumers about the attributes of the competitors' brands ... [a company] cannot appropriate the English language, and by doing so render a competitor inarticulate." *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609–10 (7th Cir.1986).

▮ The Court holds that the term "barb tie" and the phonetic equivalent BARB–TY are not generic designations for the products sold by the parties. Rather, after reviewing all the exhibits and evidence presented, the Court finds that the primary designation of the product is the term cable tie and T & B has failed to create a fact question.

### 1. Prima Facie Evidence of Non-genericness of the BARB–TY Trademark

▮ Panduit is correct that its trademark registration of the BARB–TY trademark must be taken as prima facie evidence that "barb tie" is not a generic term. The Lanham Act provides that:

> a mark registered on the principal register ... shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered.

15 U.S.C. § 1115(a). This section entitles Panduit to a presumption that its registered trademark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986). This presumption may be overcome, however, the burden is on T & B. *Id.* Also, the presumption "bursts" once the defendant presents sufficient evidence of genericness. Therefore, T & B must show that there is a genuine issue of material fact as to

genericness to overcome the presumption of non-genericness. They have failed to do so.

### 2. Distributor and Employee Testimony

The evidence presented by T & B consists largely of testimony from their distributors and employees. Mr. O'Neill, Mr. Taggart, and Mr. Andrews all testified in pertinent part that several customers have come to identify cable ties as barb ties. (O'Neill Tr. 93, 98, 104, 105, 111, 112; Taggart Tr. 55, 56, 83; Andrews Dep. 14.) Again, the test for genericness is whether the public perceives the term primarily as the designation of the article. J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 12:2 at 522–23. T & B has failed to produce any evidence indicating that the consuming public refers to or knows the cable ties as barb ties. T & B has not produced a customer survey indicating whether the term "barb tie" is the generic designation by which a cable tie would primarily be referred, even though courts have consistently held that consumer surveys are important evidence in determining whether a mark is generic. *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 641 (Fed.Cir.1991); *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559 (Fed.Cir. 1985).

The Court finds that despite the fact that T & B was the only producer of this product for over 25 years, they cannot point to a single advertisement, article, invoice or other document in which it used the term barb tie to describe the product. In fact its own expert acknowledged that the first time he had heard the term barb-tie was in connection with this litigation. (Tr. Ex. 245). For the past 25 years T & B primarily used the term cable tie or bundling strap to describe the product. (Pl. Exs. 5–18).

### 3. T & B Advertising

T & B has repeatedly referred to the product as either a bundling strap, two-piece cable tie, cable tie, cable strap, cable clamp, or a fastening system. (Pl. Exs. 13, 15, & 18). Also, Panduit has referred to the product by several names including: cable tie, stainless steel barb cable tie, nylon tie with a metal barb, and barb tie. (Pl. Exs. 24, 27, &

240). The numerous examples by which to refer to a cable tie is indicia that the term "barb tie" is not the primary designation of the product. This case is not like the *Blinded Veterans* case where the court found that "blinded veterans" was a generic term because "it is difficult to imagine another term of reasonable consciousness and clarity by which the public refers to former members of the armed forces who have lost their vision." 872 F.2d at 1041. Rather, this case is one in which T & B will not be rendered speechless if forbidden to describe its product by the term "barb-tie".

In *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir.1996), the court held in relevant part that the term "door systems" was not the generic designation for a product that automatically opens garage doors because there were alternative terms by which to describe the product and therefore the defendant would not be rendered speechless if forbidden to describe the product by the term "door systems". Similarly, T & B will still be able to refer to its product by the same names it has been using for years. The term "barb tie" was never used by T & B and simply because Panduit has chosen to trademark the term will not prevent T & B from adequately identifying or describing its own products.

### 4. Schwester Patent

In the patent description T & B described the device repeatedly as a "Self Clinching Bundling Strap" or simply a tie strap. (Nancy Clarke Declaration, June 13, 1996, Ex. 12). Nowhere in the patent application is the term "barb tie" used to describe the device being patented.

Therefore, the Court holds that T & B has failed to overcome the presumption of non-genericness and has failed to raise a genuine issue of material fact.

### C. The Term BARB–TY Does Not Create a Likelihood of Confusion As to Source

T & B asserts that Panduit's use of the trademark BARB–TY is likely to cause confusion among consumers. However, the Court has previously ruled that Panduit's

BARB–TY cable ties are not likely to cause confusion with T & B's TY–RAP cable ties. *Thomas & Betts Corp. and Thomas & Betts Holdings, Inc. v. Panduit Corp.*, 935 F.Supp. 1399, 1417.

■ Even assuming *arguendo* that the term "barb tie" is a generic term, Panduit's actions would not violate the Lanham Act. The only obligation Panduit has is to use *reasonable means to prevent confusion. Id.* As this Court stated previously, "[t]here simply is no evidence of passing off or deception on the part of Panduit, and it has taken every reasonable precaution to prevent confusion or the practice of deception in the sale of its product." *Id.*

### 1. T & B Has Not Used The Term Barb Tie

T & B does not have any residual goodwill embodied in the term "barb tie". T & B was the sole producer of the cable tie which was the subject of the Schwester patent and was marketed under the TY–RAP trademark. In the patent description T & B described the device repeatedly as a "Self Clinching Bundling Strap" or simply a tie strap. (Nancy Clarke Declaration, June 13, 1996, Ex. 12). T & B has not produced evidence to show that consumers refer to its products as barb ties.

As such the cases relied on by T & B are distinguishable. T & B argues that the present situation is similar to *Singer, Kellogg,* and their progeny, in that T & B had been the only manufacturer of cable ties for several years and thus the public has come to associate the term "barb tie" with T & B. However, the circumstances of this case are entirely different, in that T & B has never had trademark rights in the term "barb tie", and has never used the term in any way in connection with its two-piece cable ties. (Tr. Ex. 55).

In *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 204, 16 S.Ct. 1002, 1015, 41 L.Ed. 118 (1896) the Court held that the trademark "Singer" had become a generic denotation of a type of sewing machine, but required the defendant not to use the word on its product or in advertisements "without clearly and

unmistakably stating ... that the machines are made by the defendant, as distinguished from the sewing machines made by the Singer Manufacturing Company."

In *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 119, 59 S.Ct. 109, 113–14, 83 L.Ed. 73 (1938) the Court held that when a trademarked term becomes generic because the public associates the product and the term with a single manufacturer, another producer is required to "use reasonable care to inform the public of the source of the product."

Finally, in *King–Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577, 581 (2d Cir.1963) the court found that the trademark "thermos" had become the generic denotation of a vacuum-insulated container, and therefore required defendant to distinguish its product from plaintiff's by preceding "thermos" with "Aladdin's", by using only the lower case "t", and by never using the words "original" or "genuine" in describing the product.

In all the aforementioned cases a trademarked term became generic after the prolonged use by the sole manufacturer. In the present case T & B does not have a trademark on the term "barb tie". Also, T & B has failed to show that the consuming public recognizes the product as a barb tie. It is apparent that the primary designation by which the product is more commonly known is a cable tie. Therefore the above mentioned cases differ from the case at bar in two ways. First, T & B does not have trademark rights in the term "barb tie". Second, T & B has failed to show that the public has come to know the product as a barb tie.

### 2. Consumer Testimony

T & B has not presented any consumer evidence that the term "barb tie" is synonymous with T & B. T & B argues that the testimony of Mr. O'Neill, Mr. Taggart, and Mr. Andrews establish that consumers have come to associate the term "barb tie" with T & B. (O'Neill Tr. 93, 98, 104, 105, 111, 112; Taggart Tr. 55, 56, 83; Andrews Dep. 14.) However the relevant inquiry is not what the distributors and employees of T & B think their customers know, but rather what the

customers themselves believe. The Lanham Act seeks to protect the consuming public from confusion and it is their perception that is pivotal in deciding whether a term has a source indicating quality. Without more than the bald assertions of T & B's distributors and employees the Court is compelled to find that T & B has failed to carry their burden. T & B has not presented any evidence from consumers which would establish a fact question as to whether consumers have come to associate the term "barb tie" with T & B.

### 3. Documentary Evidence

T & B has failed to produce any documentary evidence which would tend to show that consumers have come to associate the term "barb tie" with T & B. T & B has not produced any customer orders, customer correspondence, or any other documents showing that the term "barb tie" is associated with T & B. Also, T & B has failed to produce any advertising or promotional materials demonstrating that the term "barb tie" is a source indicator for T & B.

Therefore the Court finds that T & B has failed to submit sufficient evidence that the term "barb tie" has either a source indicating quality as to T & B or that the term is a generic or principal designation of a cable tie. Further, the Court finds that the use of the term "barb tie" and its phonetic equivalent BARB–TY, will not likely confuse the general public.

### IV. CANCELLATION OF THE BARB–TY TRADEMARK

T & B also requests that Panduit's trademark be canceled pursuant to § 14 of the Lanham Act because of either the genericness of the trademark BARB–TY or its fraudulent procurement. The Court has found that the term "barb tie" is not generic and will only discuss the alleged fraudulent procurement of the trademark.

### A. Fraudulent Procurement

■ T & B has not created an issue of fact for consideration by a jury that Panduit's BARB–TY registration was obtained

**1344**

fraudulently. Fraud must be proved with clear and convincing evidence. *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir.1992).

██ T & B requests that Panduit's registration be canceled pursuant to § 14 of the Lanham Act. This section provides that:

> A petition to cancel a registration of a mark ... may ... be filed as follows by any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this chapter ...

> (3) At any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or has been abandoned, or its registration was obtained fraudulently ...

15 U.S.C. § 1064. T & B argues that Panduit's registration was obtained fraudulently, "since Panduit did not advise the U.S. Patent and Trademark Office of the significance of the term "barb tie" within the cable tie industry." (Comp. ¶ 32). However, T & B offers no evidence to show that Panduit's actions in registering the mark BARB–TY amounted to fraud. Moreover, the Court's finding that the term "barb tie" is not a generic designation for a cable tie is indicia that Panduit's actions were not fraudulent. Therefore, the Court finds that Panduit's registration of the trademark BARB–TY did not violate the Lanham Act.

## VI. CONCLUSION

For the foregoing reasons, **Panduit's motion for summary judgment is hereby GRANTED as to Count II of plaintiff's complaint.**