THOMAS & BETTS CORPORATION
and Thomas & Betts Holdings,
Inc., Plaintiffs,

v.

PANDUIT CORPORATION, Defendant.

No. 94 C 2656.

United States District Court,
N.D. Illinois,
Eastern Division.

May 18, 1999.

Marc Fogelberg, McBride, Baker & Coles, Chicago, IL, for plaintiffs.

Sidney David, Keith E. Gilman, Stephen F. Roth, Lerner, David, Littenberg, Krumholz & Mentlik, LLP, Westfield, NJ, for plaintiffs.

Roy E. Hofer, Gary M. Ropski, John T. Gabrielides, Stephanie S. Conis, Brinks Hofer Gilson & Lione, Chicago, IL, for defendant.

Mark D. Hilliard, Robert A. McCann, Panduit Corp., Tinley Park, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

The saga continues. After several trips between this Court and the Seventh Circuit Court of Appeals, the case is back. The Seventh Circuit previously reversed this Court's grant of summary judgment to Panduit on Count II and remanded for further proceedings. Panduit Corporation (hereinafter "Panduit") now brings a motion to dismiss Count II of the complaint filed by Plaintiffs Thomas & Betts Corporation and Thomas & Betts Holdings, Inc. (hereinafter collectively "T & B"). Panduit contends the Court no longer has jurisdiction over Count II. The Court disagrees. For the reasons set forth below, Panduit's motion to dismiss Count II is denied.

## I. BACKGROUND FACTS

T & B and Panduit are the nation's largest suppliers of cable ties. Cable ties are nylon plastic straps used to tie together cables or wires. T & B obtained a utility patent on the two-piece cable tie in 1965, which expired in 1982. T & B also obtained a design patent on the cable tie in 1966, which expired in 1980. In late 1993, Panduit began to produce a cable tie similar to that of T & B, sold under the trademark "BARB–TY." Panduit's cable tie is substantially similar in appearance to T & B's cable tie.

T & B brought this action in five counts against Panduit. Count I alleges that Panduit's metal barb oval head shaped cable tie infringes on the trade dress of T & B's cable tie in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Count II alleges that Panduit's registration and use of the trademark BARB–TY constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and seeks cancellation of Panduit's trademark registration of the term BARB–TY. T & B also alleged that Panduit's conduct violates the common law of unfair competition in Count III; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, in Count IV; and the Illinois Anti-Dilution Act, 765 ILCS 1035/15, in Count V.

T & B previously brought a motion for a preliminary injunction which was granted by the trial court in *Thomas & Betts Corp. v. Panduit Corp.*, No. 94 C 2656, 1994 WL 714619 (N.D.Ill.Dec.19, 1994), and later reversed by the Seventh Circuit, *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir.1995). The case was then transferred to this Court which granted summary judgment against T & B on Counts I, III, IV, and V. *Thomas & Betts Corp. v. Panduit Corp.*, 935 F.Supp. 1399 (N.D.Ill. 1996) ("*T & B I*"). This Court subsequently granted summary judgment against T & B with regard to Count II.

*Thomas & Betts Corp. v. Panduit Corp.*, 940 F.Supp. 1337 (N.D.Ill.1996) ("*T & B II*"). On appeal, the Seventh Circuit reversed the grant of summary judgment on Counts I and II. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir.1998) ("*T & B III*"). No appeal was taken regarding Counts III through V and they are no longer part of the case.

## II. ANALYSIS OF COUNT II

Panduit now brings a motion to dismiss Count II for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A review of the history of Count II is a necessary background.

### A. Count II of the Complaint.

Count II is captioned "Unfair Competition Under 15 U.S.C. § 1125(a) and Withdrawal Of Application For Registration (or Cancellation of Registration Under 15 U.S.C. § 1064(3))" and consists of several components. In Count II, T & B alleges the term "barb tie" has become associated with Thomas & Betts' products, "although this term is also a generic expression for identifying two-piece self-locking cable ties having a metal locking device or a barb." (Compl.¶ 26.) According to T & B, the term BARB–TY is virtually indistinguishable from and phonetically identical to the "barb tie" designation which is uniquely associated with Thomas & Betts' cable ties. (Compl.¶ 27.) As a result, T & B believes Panduit is using the BARB–TY trademark to trade on T & B's reputation. (Compl.¶ 29.) In sum, T & B asserts all of the above allegations demonstrate a violation of 15 U.S.C. § 1125(a)(1)(A) because Panduit's use of the term BARB–TY as a trademark for its cable ties constitutes a false designation of origin, "which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Panduit with Thomas & Betts or as to the origin, sponsorship or approval of Panduit's two-piece self-locking cable ties, or the commercial goods or activities of others." (Compl.¶ 28.)

In Count II, T & B also claims that, because of "barb tie's" association with T & B's products and generic quality, Panduit obtained its registration of the trademark BARB–TY fraudulently and did not have the right to register the mark BARB–TY. (Compl.¶¶ 32–33.) To support this allegation, T & B reviews Panduit's application history before the U.S. Patent and Trademark Office ("PTO") for the BARB–TY mark. Panduit's Application Serial No. 74/331,294, covering the mark was allowed on July 13, 1993. (Comp.¶ 30.) T & B asserts Panduit failed to advise the PTO of the significance of the term "barb tie" while making its application. (Comp.¶ 31.) This is in direct contravention to 15 U.S.C. § 1064(3) according to T & B. (Comp.¶ 33.)

T & B claims damages from the registration of the BARB–TY mark arising out of a misrepresentation as to the source of the cable tie or in connection with the way the mark is used. (Comp.¶ 35.) In addition, as part of its prayer for relief, T & B seeks an order pursuant to 15 U.S.C. § 1119 directing the PTO Commissioner to cancel the BARB–TY registration. (Comp.¶ B, p. 17.)

### B. *T & B I*, 935 F.Supp. 1399 (N.D.Ill. 1996).

Although there were earlier opinions in this case, Count II was first addressed on the merits in this Court's August 15, 1996 decision in connection with Panduit's motion for summary judgment. *T & B I*, 935 F.Supp. 1399, 1418 (N.D.Ill.1996). The Court denied Panduit's motion for summary judgment on Count II because the record was incomplete. *Id.* The parties were given an opportunity to further brief and argue the issue. *Id.*

1. T & B argued that the trademark should be canceled pursuant to 15 U.S.C. § 1064. That section provides the grounds upon which a petition to cancel a mark may be made including genericness and fraudulent procurement. However, while 15 U.S.C. § 1064 provides those grounds, that section pertains only to petitions to the Federal Trade Commission.

### C. *T & B II*, 940 F.Supp. 1337 (N.D.Ill.1996).

On October 17, 1996, following additional briefing and oral argument, the Court entered its decision granting summary judgment to Panduit on Count II. *T & B II*, 940 F.Supp. 1337 (N.D.Ill.1996). In the decision, this Court analyzed two separate claims under Count II: 1) T & B's claim that Panduit's use of the BARB–TY trademark constitutes a misleading use and violates § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125 (the "unfair competition claim"); and 2) T & B's claim that Panduit's trademark be canceled pursuant to § 14 of the Lanham Act, 15 U.S.C. § 1064,[1] because of either the genericness of the term "barb tie" (the "genericness issue") or the fraudulent procurement of the BARB–TY mark (the "fraudulent procurement of trademark claim"). *Id.* at 1339.

With respect to the first issue, this Court granted summary judgment to Panduit because Panduit's use of the term BARB–TY did not violate § 43(a)(1) of the Lanham Act as a matter of law because the term "barb tie" is not generic and the BARB–TY trademark does not create confusion as to source. *Id.* at 1339–1343. The Court held the term barb tie was not generic and the primary designation of the product is the term cable tie. *Id.* at 1341. The Court next held Panduit's use of the term BARB–TY is not likely to cause confusion with T & B's TY–RAP cable ties. *Id.* at 1342. The Court stated "even assuming arguendo that the term 'barb tie' is a generic term, Panduit's actions would not violate the Lanham Act." *Id.* T & B produced no evidence to show that consumers refer to its products as barb ties. *Id.* The

The Court notes, as T & B did in it prayer for relief, that it is 15 U.S.C. § 1119 which actually provides courts with the jurisdiction to cancel registered marks. However, the Court concludes that the two sections must be read together in order for a court to be informed of the conditions under which it may cancel a mark.

Court distinguished the three cases relied upon by T & B[2] because in each of those cases, "a trademarked term became generic after prolonged use by the sole manufacturer." *Id.* at 1343. T & B has never had a trademark in the term "barb tie" and T & B had failed to show the public has come to know the product as a barb tie. *Id.* The Court made three findings with respect to the false designation of origin claim. First, T & B failed to submit sufficient evidence to show the term "barb tie" has a source indicating quality as to T & B; second, T & B failed to demonstrate the term "barb tie" is a generic or principal designation of a cable tie; and, third, the Court found the term "barb tie" and its phonetic equivalent BARB–TY, will not likely confuse the general public. *Id.* at 1343.

With respect to the second issue, this Court held that Panduit's BARB–TY trademark should not be canceled pursuant to § 14 of the Lanham Act, 15 U.S.C. § 1064, because the term "barb tie" is not generic and because no fraud was committed against the U.S.Patent and Trademark Office. *Id.* at 1343–4.

#### D. T & B's Appeal Brief on Count II.

T & B appealed this Court's grant of summary judgment to Panduit on Counts I and II. In its brief to the Seventh Circuit, T & B's Statement of Issues regarding Count II read as follows:

> 2. Did Magistrate Judge Denlow err in granting summary judgment against T & B on its claim to cancel Panduit's trademark registration by finding the term Barb–Ty to be non-generic?

(Panduit's Mem. in Resp. to T & B's Surreply in Opp'n to Panduit's Mot. to Dismiss Count II, Ex. N, T & B's Br. at 1). In its brief regarding Count II, T & B captioned its argument as follows:

#### F. The District Court Erred In Finding The Term Barb–Ty To Be Nongeneric As A Matter of Law.

*Id.* at 44. T & B began its four-page argument on Count II stating: "T & B also seeks cancellation of Panduit's registration for the term Barb–Ty because of genericness and/or fraudulent procurement." *Id.* T & B asserted that it filed its complaint before Panduit's registration issued and therefore Panduit was not entitled to a presumption of nongenericness. *Id.* T & B claimed the term "barb tie" was generic for a variety of reasons and the issue of genericness raised a fact question. *Id.* T & B concluded its argument stating: "At the very least, the trier of fact should have the opportunity to consider the propriety of Panduit's registration in light of information which was not available to the U.S. Patent and Trademark Office." *Id.* at 47. In its conclusion, T & B requested "the district court's grant of summary judgment should be reversed and this case remanded with guidance for further discovery and trial by jury." *Id.*

Nowhere in its briefs to the Seventh Circuit does T & B specifically assert an unfair competition claim based on the alleged genericness of Panduit's BARB–TY mark. In its statement of the case, T & B briefly reviews the history of the case and states: "In T & B V and T & B VI, Judge Denlow granted the motion, finding no issue of material fact remaining on six dispositive issues in the case. T & B seeks reversal of the summary judgment on the trade dress claim under federal and state law, and on the cancellation claim." *Id.* at 2. A fair reading of this statement is that the trade dress claim refers to Count I and the cancellation claim refers to Count II.

#### E. *T & B III*, 138 F.3d 277 (7th Cir. 1998).

The Seventh Circuit reversed this Court's grant of summary judgment to

---

**2.** *Singer Mfg. Co. v. June Mfg. Co.,* 163 U.S. 169, 204, 16 S.Ct. 1002, 1015, 41 L.Ed. 118 (1896); *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 119, 59 S.Ct. 109, 113–14 (1938); and *King–Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577, 581 (2d Cir.1963).

Panduit on Count II. *T & B III*, 138 F.3d 277, 302 (7th Cir.1998). Early in its decision, the Seventh Circuit framed the issue under Count II: "With respect to Count II of the complaint, which sought cancellation of one of the defendant's trademarks, the plaintiffs allege that the district court erroneously found that no question of fact exists." *Id.* at 281. In its analysis of Count II later in its decision, the Seventh Circuit captioned the section: "III. Cancellation of Panduit's Barb–Ty Trademark." *Id.* at 300. The Seventh Circuit framed the issue as follows: "In its complaint, T & B also sought the cancellation of Panduit's trademark 'Barb–Ty,' arguing that it was a generic term or, alternatively, that registration had been obtained fraudulently." *Id.* The Seventh Circuit observed that T & B had waived its fraudulent procurement of trademark claim. *Id.* at 300 n. 9 ("T & B does not present any argument in its brief relating to the fraudulent procurement claim, and as such we need not address it.") (citations omitted). The Seventh Circuit held Panduit was entitled to a presumption of nongenericness of its "Barb–Ty" trademark because T & B waived the argument by failing to cite any case law in support. *Id.* at 301. However, the presumption of genericness could be rebutted and despite the weakness of T & B's evidence, issues of material fact made summary judgment inappropriate. *Id.* at 301–302. Consequently, the Seventh Circuit reversed this Court's grant of summary judgment to Panduit on Count II and remanded the case for further proceedings consistent with the opinion. *Id.* at 301. However, the opinion did not state that the unfair competition claim on genericness was waived, nor did it specifically state that such claim still existed.

### F.   What Remains of Count II.

The following portions of Count II are no longer at issue. First, T & B acknowledges that it is not pursuing a declaratory judgment cause of action to cancel the BARB–TY trademark. (Tr. of Apr. 27, 1999 Oral Arg. at 5.) Second, regarding the unfair competition claim, T & B acknowledges its waiver of its claim of likelihood of confusion based on the public's association of the BARB–TY mark with T & B. (T & B's Surreply Mem. in Opp'n to Panduit's Mot. to Dismiss at 5.) This argument was fully discussed by this Court in T & B II but never argued by T & B on appeal. *T & B II*, 940 F.Supp. 1337, 1342–43 (N.D.Ill. 1996). This Court rejected T & B's argument that T & B's use of the trademark BARB–TY was likely to cause confusion because T & B "failed to submit sufficient evidence that the term 'barb tie' has either a source indicating quality as to T & B ...". *Id.* at 1343. Third, T & B waived its fraudulent procurement of trademark claim. *T & B III*, 138 F.3d at 300 n. 9. Having waived these arguments on appeal or in oral argument before this Court, we now turn to the question of what remains of Count II.

The Seventh Circuit expressly addressed the genericness issue and held "issues of material fact remain on the topic of genericness and ... summary judgment was inappropriate here." *T & B III*, 138 F.3d at 301. However, the parties disagree about the impact of the surviving genericness issue on the other claims in Count II. Panduit contends the genericness claim relates only to the issue of cancellation, and this Court has no jurisdiction to cancel a trademark in the absence of an existing unfair competition claim in Count II. T & B contends the unfair competition claim based on genericness still exists, and even if it does not, this Court has jurisdiction to cancel the mark because an unfair competition claim did exist at the time of filing the lawsuit. The Court must address the issues of independent jurisdiction under 15 U.S.C. § 1119 and whether an unfair competition claim must still exist before tackling the major issue.

### G.   No Independent Jurisdiction Under 15 U.S.C. § 1119

For this Court to have subject matter jurisdiction to hear a case, a justiciable

case must exist. Merely bringing suit for cancellation of a wrongfully registered generic term is insufficient to create a justiciable case or controversy. *See Windsurfing Int'l, Inc. v. AMF, Inc.,* 828 F.2d 755, 758–59 (Fed.Cir.1987); *Performance Industries Inc. v. Morton Intern, Inc.,* 22 U.S.P.Q.2d 1632, 1634, 1992 WL 50083 (E.D.Penn.1992).

> Under the Lanham Act, district courts have the power to cancel registrations, but only in an "action involving a registered mark." 15 U.S.C. § 1119. "Involving" cannot mean the mere presence of a registered trademark, but must be read as involving the right to use the mark and thus the right to maintain the registration.... There must, therefore, be something beyond the mere competitor status of the parties to serve as a basis for the court's jurisdiction. Such a basis may, for example, be a suit for trademark infringement or a "case of actual controversy" referred to in the Declaratory Judgment Act.

*Windsurfing Int'l,* 828 F.2d at 758–59. *See also Performance Industries,* 22 U.S.P.Q.2d at 1634 ("[A] plaintiff with no registered mark cannot obtain jurisdiction in federal court by relying on Section 37 of the Lanham Act [15 U.S.C. § 1119] alone.... There must be some other independent ground of jurisdiction, such as a claim of infringement or a 'case of actual controversy.' ") (citing *Windsurfing Int'l,* 828 F.2d at 758–59). The Court in *Windsurfing International* noted that the test for determining the existence of an actual case or controversy under the Declaratory Judgment Act required the plaintiff to have a real and reasonable apprehension of litigation and to have engaged in a course of conduct which created an adversarial conflict with the defendant. 828 F.2d at 757. *See also Ditri v. Coldwell Banker Residential Affiliates,* 954 F.2d 869, 873 (3d. Cir.1992); *Universal Sewing Mach. Co. v. Standard Sewing Equip. Corp.,* 185 F.Supp. 257, 259 (S.D.N.Y.1960) (stating "even if we construe that claim as one to declare defendant's federal registration in-

valid ... the same result would obtain because of the absence of a justiciable controversy, i.e., defendant has never threatened plaintiff, directly or indirectly, or in any manner, with litigation.").

As the above courts have noted, the Lanham Act power to cancel registrations, 15 U.S.C. § 1119, "is not an independent source of jurisdiction, however; it merely defines certain available remedies." *Clamp–All Corp. v. Cast Iron Soil Pipe Institute,* 3 U.S.P.Q.2d 1018, 1024 n. 12, 1987 WL 9760 (D.Mass.1987). *See also Maljack Productions Inc. v. Motion Picture Ass'n of America,* 22 U.S.P.Q.2d 1867, 1869, 1992 WL 78735 (D.D.C.1992) (holding that 15 U.S.C. § 1119 is not an independent source of jurisdiction and there must be some other violation of the Lanham Act providing for redress in the courts), *rev'd on other grounds,* 52 F.3d 373 (D.C.Cir.1995); *Universal Sewing Mach. Co.,* 185 F.Supp. at 260 (holding that the court is without jurisdiction to hear a 15 U.S.C. § 1119 claim when there is no other justiciable controversy between the parties involving the defendant's mark and stating "[i]n our view § 37 [15 U.S.C. § 1119] assumes a properly instituted and otherwise jurisdictionally supportable action involving a registered mark. That not being the case here, we are without jurisdiction of the subject matter...."). T & B does not contend that it was under the reasonable apprehension of suit by Panduit asserting its registration against T & B and is not pursuing a declaratory judgment action. Consequently, absent an unfair competition claim in Count II, this Court does not have jurisdiction to grant T & B relief under 15 U.S.C. § 1119.

**H. The Unfair Competition Claim Must Still Exist In Order For This Court To Exercise Jurisdiction.**

T & B asserts the allegations contained in Count II are sufficient to present a case or controversy. First, T & B argues it

need not allege impending litigation because its claim for cancellation of the registration was brought in the context of a valid trademark infringement claim. The parties agree that an unfair competition claim existed at the time the suit was filed. Panduit argues that a case or controversy, in the form of an unfair competition claim in the present case, must exist between the parties throughout the pendency of a case. T & B argues that determinations of subject matter jurisdiction and the existence of a case or controversy should be made at the complaint stage. T & B cites *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980), for support. The Court in *International Harvester* stated that "[i]n deciding whether the plaintiff has carried [the burden of supporting the jurisdictional allegations of the complaint], the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

■ However, while *International Harvester* requires a justiciable controversy at the complaint stage, the Seventh Circuit's statements in *International Harvester* does not support the proposition for which T & B cites it, that the Court is limited to looking at only the complaint stage when making the determination of whether there is a case or controversy. To the contrary, a case or controversy must exist at the complaint stage but must also exist at every stage of the litigation. "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974)). It is proper to consider post-filing events in the evaluation of continuing jurisdiction. *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636 (Fed.Cir.1991). While T & B's allegations as to its Lanham Act unfair competition claim created a justiciable case or controversy at the complaint stage, the Court concludes that the unfair competition claim must continue to be viable in order for this Court to grant the relief of canceling the mark under 15 U.S.C. § 1119.

## I. The Genericness Issue

■ The question remains as to whether Count II still raises a viable claim for unfair competition when the only remaining substantive issue is genericness and one of the remedies sought is cancellation of the BARB–TY trademark. T & B argues Count II of T & B's complaint was, and still is, a claim for unfair competition under Section 1125(a) of the Lanham Act based on Panduit's misleading use of a generic mark. This claim appears extremely weak. First, in that T & B argues that the term "barb tie" is generic, it can have no rights in that term. "Because a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain...." *Blinded Veterans Ass'n v. Blinded American Veterans Found.*, 872 F.2d 1035, 1039 (D.C.Cir.1989). If the term was generic as T & B argued, T & B could not have acquired rights to the term nor received trademark protection for its use of the term. "[G]eneric terms receive no trademark protection." *Mil–Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir.1996). *See also Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977) ("A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances."). Since, T & B has no rights to the term, it is difficult to comprehend what claim for unfair competition it now asserts.

However, given the Seventh Circuit's statement that summary judgment on Count II is reversed, this Court is hard-pressed to now throw T & B out of Court on Count II. The Seventh Circuit concluded that T & B did raise a genuine issue of material fact regarding the genericness is-

sue and reversed and remanded Count II to this Court. The Seventh Circuit clearly identified certain issues waived on appeal. *See T & B III*, 138 F.3d 277, 283, 300 n. 9 (7th Cir.1998) (identifying the fraudulent procurement of trademark claim and Counts III–V as waived). The claim for unfair competition based on genericness was not one of them. Panduit has not provided a sufficient reason why this Court should not adhere to the Seventh Circuit's ruling reversing summary judgment on Count II and remanding it. "When matters are decided by an appellate court, its rulings, unless reversed by it or by a superior court, bind the lower court." *Insurance Group Comm. v. Denver & R.G. W. R.R.*, 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947). "Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate." *Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838). Consequently, based upon the Seventh Circuit's ruling in *T & B III*, this Court is bound to proceed with Count II.

The determination that Count II should be dismissed is better left to the Seventh Circuit. In the event the Seventh Circuit did not intend to preserve an unfair competition claim under Count II, the parties may later appeal this issue. In the meantime, T & B will be permitted to proceed on the theory that Panduit is unfairly competing because the term barb tie is a generic term which is likely to cause confusion as to the origin or sponsorship of Panduit's cable ties.

### III.   CONCLUSION

For the foregoing reasons, **Panduit's motion to dismiss Count II of Plaintiff's complaint for lack of subject matter jurisdiction is hereby DENIED.**