**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0023n.06
Filed: January 6, 2005

**No. 04-5030**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: RUSSELL CAVE COMPANY, INC., f/k/a The J. Peterman Company, | ) ) ) | |
| Debtor, | ) ) | |
| APPAREL DESIGNER ZONE, INC., | ) ) | |
| Defendant-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | ) ) | KENTUCKY |
| Plaintiff-Appellee. | ) | |

Before: SILER, SUTTON, and FARRIS,[*] Circuit Judges

   **PER CURIAM**.  Defendant, Apparel Designer Zone, Inc. ("ADZ"), appeals the grant of

summary judgment by the district court, in favor of the Official Committee of Unsecured Creditors

(the "Committee")[1] on its breach of contract claim, ADZ's fraud claim, and ADZ's claims for

damages arising from the J. Peterman Company's alleged breach of contract and fraud.  We affirm.

---

   [*]The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

   [1]The Committee was appointed by the Office of the United States Trustee, and is a successor in interest, in bankruptcy, to the J. Peterman Company ("Peterman").

## BACKGROUND

Peterman was a retail company which offered clothing and furniture through retail stores and direct-mail catalogues. ADZ conducted liquidation sales for retailers.[2] In December 1998, Peterman entered into an agreement with ADZ to dispose of Peterman's remaining merchandise through liquidation sales with Peterman entitled to 88% of the proceeds.

After entering the agreement, but prior to the sale, Peterman filed for bankruptcy protection. Peterman and ADZ then revised their agreement (hereinafter, the "Modified Agreement"), with ADZ guaranteeing payment of 45% of Peterman's costs, regardless of whether the merchandise was sold. Peterman agreed to supply ADZ with approximately 60,000 units of merchandise. The sale and the Modified Agreement were authorized by the bankruptcy court on January 29, 1999, and Peterman shipped the merchandise to ADZ on that date. The merchandise arrived later than specified in the Modified Agreement, but ADZ accepted shipment.

ADZ asserts that Peterman breached the Modified Agreement because the shipment was late; that 40,000, rather than 60,000, units were supplied; and that Peterman retail stores in California were offering similar merchandise at prices discounted below the liquidation prices. ADZ sold 8,481 units for a total of $396,953.86, remitting $160,000 to Peterman. ADZ then held additional sales in San Diego, Chicago, Boston, and Baltimore with total sales of 35,957 units, and it grossed $1,241,581.06. No additional payments to Peterman have been made. The Committee claims a total of $1,030,359.24, or 45% of $2,289,687.20, should have been paid to Peterman.

---

[2]ADZ has been inactive since 2001, although the company has not yet been dissolved.

The Committee filed an adversary proceeding for breach of contract and unjust enrichment against ADZ in bankruptcy court in the Eastern District of Kentucky. ADZ counter-claimed for fraud. Prior to trial, the case was moved to the district court. The district court granted the Committee's motion for summary judgment, holding that Peterman had not materially breached the Modified Agreement and that ADZ was liable unless it could prevail on its fraud counterclaim. The court additionally held that, although ADZ's fraud claim was not time-barred, any reliance on the alleged misrepresentations made by Peterman was unreasonable and without justification. Eventually the court entered judgment ordering ADZ to pay $870,359.24 plus interest and costs.

## STANDARD OF REVIEW

"Although findings of fact adopted by a District Court are binding on an appellate court unless clearly erroneous, Fed. R. Civ. P. 52(a), the interpretation of a written contract, conclusions of law, mixed questions of fact and law, and findings as to an ultimate fact," as found by the district court, "are within the competence of an appellate court." *University Hills, Inc. v. Patton*, 427 F.2d 1094, 1099 (6th Cir. 1970). The decision of a district court to grant summary judgment is reviewed *de novo*. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). By agreement, California law applies.

## DISCUSSION

ADZ contends the district court failed to construe the word "approximately" in its ordinary sense. We find the district court's interpretation of the term "approximately" is made immaterial by ADZ's own actions.

The district court recognized the discrepancy in inventory between the two parties: "[ADZ] avers that only 40,000 to 45,000 units were actually received. Peterman asserts that it delivered 45,997 items." The district court held that 45,997 units was approximately 60,000 units, and therefore Peterman did not breach the Modified Agreement. Regardless of the correctness or incorrectness of the district court's interpretation, ADZ was only able to sell 8,481 units at the San Francisco sale – the only sale authorized under the Modified Agreement.

ADZ may have been entitled to a larger shipment than it received. However, proof of damages is required to show breach. *Walsh v. West Valley Mission Community College Dist*., 78 Cal.Rptr.2d 725, 733 (Cal. Ct. App. 1998). ADZ has not made such a showing. As it was able to sell fewer than 9,000 units at the sale as contracted for, the missing 15,000 to 20,000 units in the shipment did not damage ADZ's ability to hold its sale and produce income. Without the proof of damages incurred by ADZ due to the missing units, ADZ cannot recover for the alleged breach. The inability of ADZ to recover its expectation of profit for the entire 60,000 units from the later sales is immaterial, as those sales were not authorized by the Modified Agreement.

Additionally, Peterman did not breach the Modified Agreement in its selection of merchandise for the sale. Peterman was to supply inventory that was not "otherwise unsellable." Applying the ordinary rules of contract interpretation, *Gil v. Mansano*, 121 Cal. App. 4th 739, 743 (Cal. Ct. App. 2004), the parties implicitly intended "unsellable" to mean merchandise that was damaged or that could otherwise not be sold because of its undesirable condition. Thus, supplying potentially out-of-season goods did not equal supplying unsellable merchandise.

Nor did Peterman breach an implied duty of good faith and fair dealing by engaging in discount sale activity at its California retail stores at the time of the San Francisco liquidation sale. *See Maljack Productions, Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995). To establish such a claim, the party asserting the breach must "plead deliberate and conscious bad faith" by the other party. *Id.* Relevant conduct is not behavior which results from "an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act." *Id.* Here, ADZ did not plead sufficient facts to show that Peterman acted with the requisite consciousness and deliberateness. Rather, the Modified Agreement expressly reserved Peterman's right to sell its merchandise, implicitly reserving the right to discount, or place that merchandise "on sale," in Peterman's retail stores and catalogs.

Finally, in the counterclaim for fraud, ADZ alleges Peterman made false statements with the intention of inducing reliance. The elements of fraudulent misrepresentation are: 1) misrepresentation; 2) knowledge of falsity; 3) intent to induce reliance; 4) justifiable reliance; and 5) damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996).

From its own correspondence, ADZ was a significant force behind the Modified Agreement, asserting the financial benefits of continuing, and potential damage to Peterman's reputation if the event were canceled. ADZ does assert that the alleged misrepresentation, coupled with a narrow time frame allowed to consider Peterman's request for a 45% guarantee, was an important consideration in agreeing to the change. However, it does not appear that the representation was key to ADZ's agreeing to continue with the sale, as ADZ asserted its own very strong arguments in favor

of ratifying the contract.  The district court determined that, assuming Peterman's representations

were false, ADZ's reliance was unjustifiable given ADZ's experience in the industry.  As ADZ

cannot prevail without showing that its reliance on the alleged misrepresentation was justified, the

district court's grant of summary judgment on this issue was proper.  *See Guido v. Koopman*, 1 Cal.

App. 4th 837, 843 (Cal. Ct. App.1991).

     **AFFIRMED**.