**THOMAS & BETTS CORPORATION and Thomas & Betts Holdings, Inc. Plaintiffs,**

v.

**PANDUIT CORPORATION, Defendant.**

No. 94 C 2656.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 22, 1999.

Malcolm Hirsten Brooks, Marc L. Fogelberg, McBride, Baker & Coles, Chicago, IL, Sidney David, Keith E. Gilman, Lawrence I. Lerner, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, James Hay, Lewis & McKenna, Saddle River, NJ, for Plaintiffs.

Gary Merlchoir Ropski, Jerome Gilson, Roy E. Hofer, John T. Gavrielides, James Michael McCarthy, Stephanie Sue Conis, Cynthia A. Homan, Brinks, Hofer, Gilson & Lione, Chicago, IL, Charles R. Wentzel, Robert A. McCann, Mark D. Hilliard, Panduit Corporation, Legal Dept., Tinley Park, IL, David Craig Hilliard, John Thompson Brown, John Michael Murphy, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Thomas & Betts Corporation and Thomas & Betts Holdings, Inc. (hereinafter collectively referred to as "T & B") move for an order to delay adjudication of their extraterritorial Lanham Act claims against Panduit Corporation (hereinafter "Panduit") until after adjudication of their domestic Lanham Act claims. The Court held oral arguments on September 2, 1999. This opinion expands upon the Court's ruling and order entered on September 2, 1999. For the reasons previously discussed in open court and set forth below, T & B's motion is granted.

## I. BACKGROUND FACTS

T & B and Panduit are the nation's largest suppliers of cable ties. Cable ties are nylon plastic straps used to tie together a group of cables or wires. T & B obtained a utility patent on the two-piece cable tie in 1965, which expired in 1982. T & B also obtained a design patent on the cable tie in 1966, which expired in 1980.

In about 1994, Panduit began to produce a cable tie similar to that of T & B, sold under the trademark "BARB–TY." Panduit's product is substantially similar in appearance to that produced by T & B.

T & B originally brought this action in five counts against defendant Panduit. Count I alleges that Panduit's metal barb oval head shaped cable tie infringes on the trade dress of T & B's cable tie in violation of 15 U.S.C. § 1125(a) (hereinafter the "Lanham Act"). Count II alleges that Panduit's use of the name BARB–TY constitutes unfair competition and seeks cancellation of Panduit's trademark registration of the term BARB–TY under 15 U.S.C. § 1064(3). T & B also alleged that Panduit's conduct violates the common law of unfair competition (Count III); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. (Count IV); and the Illinois Anti–Dilution Act, 765 ILCS 1035/15 (Count V). Counts III through V are no longer involved in the case.

T & B previously brought a motion for a preliminary injunction which was granted by the trial court in *Thomas & Betts Corp. v. Panduit Corp.*, No. 94 C 2656, 1994 WL 714619 (N.D.Ill.Dec.19, 1994), and later reversed by the Seventh Circuit. *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir.1995) (hereinafter "*T & B I*"). The case was then transferred to this Court which granted summary judgment against T & B on counts I, III, IV, and V. *Thomas & Betts Corp. v. Panduit Corp.*, 935 F.Supp. 1399 (N.D.Ill. 1996). This Court subsequently granted summary judgment against T & B with regard to count II. *Thomas & Betts Corp. v. Panduit Corp.*, 940 F.Supp. 1337 (N.D.Ill.1996). On appeal, the Seventh Circuit reversed the summary judgment on Counts I and II. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir.1998)(hereinafter "*T & B II*"). No appeal was taken regarding Counts III through V.

Panduit then brought a motion to dismiss Count II for lack of subject matter jurisdiction. This Court denied Panduit's motion to dismiss. *Thomas & Betts Corp. v. Panduit Corp.*, 48 F.Supp.2d. 1088 (N.D.Ill.1999).

The parties are currently engaged in discovery while preparing for trial. The issue of extraterritorial jurisdiction first arose in the context of the scope of discovery. Subsequently, T & B filed its motion to delay adjudication of its extraterritorial Lanham Act claims, which is now before the Court.

## II.  ISSUES PRESENTED

T & B now moves for an order to delay adjudication of its extraterritorial Lanham Act claims until after adjudication of its domestic Lanham Act claims. T & B proposes to go to trial first on Lanham Act claims arising from domestic business conducted by Panduit. In an effort to curb expenses relating to foreign discovery, if T & B does not prevail on its domestic claims, it agrees to voluntarily dismiss its Lanham Act claims arising out of foreign business conducted by Panduit. Conversely, if T & B does prevail on its domestic claims, T & B will seek a second trial on Lanham Act claims arising from foreign business activities.

Therefore, the issues before the Court are 1) whether this Court has jurisdiction to hear T & B's extraterritorial claims, 2) whether this Court has the discretion to decline to exercise its jurisdiction over T & B's extraterritorial claims, and 3) whether such discretion should be exercised at this time. The Court concludes that it has jurisdiction to hear T & B's extraterritorial claims. Furthermore, the Court has the discretion to decline to exercise its jurisdiction over Lanham Act claims arising from foreign business activities, however a full consideration should await the outcome of the trial on the domestic Lanham Act claims.

## III. EXTRATERRITORIAL JURISDICTION OF THE LANHAM ACT

### A. District Courts Have Extraterritorial Jurisdiction Under the Lanham Act

#### 1. The Lanham Act Confers Broad Extraterritorial Jurisdiction

The Lanham Act provides a civil action against "any person who shall, without consent of the registrant, use in commerce any reproduction, counterfeit copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The action is available to any plaintiff with a registered United States trademark and may be based, among other things, upon any "device ... which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1125(a)(1). Commerce is sweepingly defined as " all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.

■ The Lanham Act confers broad judicial jurisdiction over all commerce which may lawfully be regulated by Congress. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S.Ct. 252, 254, 97 L.Ed. 319 (1952); *Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 503 (9th Cir.1991). Congress has the power to regulate foreign trade practices of United States citizens, even though those acts might occur outside the territorial boundaries of the United States, *Bulova Watch Co.*, 344 U.S. at 286, 73 S.Ct. at 255. It has long been established that "the United States is not debarred by any rule of international law from governing the conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed." *Bulova Watch Co.*, 344 U.S. at 285, 73 S.Ct. at 255 (quoting *Skiriotes v. Flori-*da, 313 U.S. 69, 73, 61 S.Ct. 924, 927, 85 L.Ed. 1193 (1941)).

#### 2. Courts Have Formulated A Three Part Test to Determine Extraterritorial Jurisdiction

■ The Lanham Act can be applied to foreign activities where the defendant is a United States citizen, the defendant's actions affect American commerce, and there is no conflict with foreign trademark law. In *Bulova*, the Court exercised extraterritorial jurisdiction in a case between United States citizens involving a United States trademark, acts of trademark infringement in a foreign country, no foreign trademark issue, and no conflict with foreign trademark laws. *Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct. 252. Because Mexico's courts nullified the Mexican registration of Bulova, there was no conflict with foreign law. In upholding the award of extraterritorial injunctive relief, the Court held, "Where ... there can be no interference with the sovereignty of another nation, the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *Bulova Watch Co.*, 344 U.S. at 289, 73 S.Ct. at 257.

The Second and Fifth Circuits subsequently refined the factors in *Bulova* into a three-part test. A district court has proper extraterritorial jurisdiction when 1) the defendant is a United States citizen, 2) the defendant's actions had some effect on United States commerce, and 3) there is no conflict with trademark rights established under foreign law. *Vanity Fair Mills, Inc., v. T. Eaton Co.*, 234 F.2d 633, 642 ( 2d Cir.1956); *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 (5th Cir.1983). These factors are the primary elements in analyzing extraterritorial jurisdiction. The absence of any one factor is not dispositive, and a court should not limit its inquiry to only these factors. *American Rice, Inc.*, 701 F.2d at 414.

In a case with facts similar to those in *Bulova,* the court in *American Rice,* applying the *Bulova* test, found that extraterritorial jurisdiction is proper in a case involving a United States citizen plaintiff, a United States citizen defendant, a United States trademark, infringement upon the trademark by the defendant in a foreign country, no foreign trademark issue, and no conflict with foreign trademark law. Although substantially all the infringement activity of the defendant occurred outside the geographical territory of the United States, the court held, "Merely because the consummation of the unlawful activity occurred on foreign soil is of no assistance to the defendant." *American Rice, Inc.,* 701 F.2d at 415.

The court provided clarification to determine whether a case conflicts with foreign law stating, "Absent a determination by a [foreign] court that the [defendant] has a legal right to use its marks, and that those marks do not infringe [plaintiff's] mark, we are unable to conclude that it would be an affront to [foreign] sovereignty or law if we affirm the district court's injunction prohibiting the defendant from injuring the plaintiff's [foreign] commerce conducted from the United States." *Id.* at 415–416.

The Ninth Circuit uses a similar test to determine extraterritorial jurisdiction under the Lanham Act. "[T]here are three criteria which must be considered: (1) there must be some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; (3) the interest of and links to American foreign commerce must be sufficiently strong in relation to those of other nations." *Reebok Int'l, Ltd. v. Marnatech Enter., Inc.,* 970 F.2d 552, 554 (9th Cir. 1992); *Ocean Garden, Inc. v. Marktrade Co., Inc.,* 953 F.2d 500, 503 (9th Cir.1991); *Star–Kist Foods, Inc. v. P.J. Rhodes & Co.,* 769 F.2d 1393, 1395 (9th Cir.1985). The third criteria, the interest of and links to American foreign commerce, involves the balancing of the following seven relevant factors:

[T]he degree of conflict with foreign law or policy, the nationality or allegiance of the parties and the locations or principal places of business of corporations, the extent to which enforcement by either state can be expected to achieve compliance, the relative significance of effects on the United States as compared with those elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Reebok Int'l, Ltd.,* 970 F.2d at 555.

In *Ocean Garden* and *Reebok,* the court found extraterritorial jurisdiction under the Lanham Act in cases where the plaintiff was a citizen of the United States, the defendant was either a citizen or resident of the United States, the foreign business activity infringed upon a valid United States trademark, and there was some effect on American commerce. In finding that the district court's injunctive relief provided no conflict with foreign law, the Ninth Circuit noted, "Since to this Court's knowledge there has been no adjudication on the merits in the [foreign] courts, there is no danger at this time of this preliminary injunction interfering with the laws of a foreign nation." *Ocean Garden, Inc.,* 953 F.2d at 504; *Reebok Int'l, Ltd.,* 970 F.2d at 555 n. 2.

The two tests are very similar and produce the same results when applied. The Ninth Circuit test is merely a more detailed version of the *Bulova* test. Therefore, this Court will analyze this case based on the *Bulova* test as amplified by the Second, Fifth and Ninth Circuits in the absence of a Seventh Circuit decision.

### 3. Extraterritorial Jurisdiction is Not Proper When A Foreign Trademark is at Issue

The court in *Vanity Fair Mills, Inc.,* 234 F.2d at 646, applying the *Bulova* test,

found that extraterritorial jurisdiction is not proper in a case that involves a United States citizen plaintiff, a foreign citizen defendant, a foreign trademark, infringement upon the trademark by the defendant in a foreign country, and the determination by a United States court of the foreign trademark law as it applies to a foreign defendant's actions in a foreign country. In its analysis, the court stated that the "crucial issue" was "the validity of defendant's [foreign] trade-mark registration under [foreign] trademark law." *Id.* In declining to exercise jurisdiction over the portion of the case that related to foreign trademark law on the grounds of *forum non conveniens* and conflict of laws, the court noted that "we do not think a United States district court should take jurisdiction over that portion of this action turning on the validity or invalidity of defendant's Canadian trade-mark." *Id.*

Similarly, in *Goldberg v. Cordis Corp.,* 203 U.S.P.Q. 717, 718, 1976 WL 21023 (N.D.Ill.1976), *aff'd* 567 F.2d 392 (7th Cir. 1977), the court declined to exercise jurisdiction in a case involving a United States citizen plaintiff, a United States citizen defendant, foreign patents, infringement of foreign patents, and the determination of foreign patent law by a United States court as it applies to a United States citizen plaintiff. Again, the crucial issue was the "determin[ation of] the validity of patents granted by foreign governments." *Id.* In declining to exercise jurisdiction on the basis of comity, the court stated that "[i]n an action where claims of infringement of *foreign patents* are made, .. the power to adjudicate conflicts of this type should be exercise with great reluctance." *Id.* (Emphasis added.) .

Likewise, in *Star–Kist,* the court further clarified the circumstances under which a conflict with foreign laws would justify denying extraterritorial jurisdiction. The court held that "principles of international comity and fairness" precluded application of the Lanham Act to foreign trademarks of which proceedings were pending in a foreign patent office. *Star–Kist Foods, Inc.,* 769 F.2d at 1396.

### 4. The Court May Limit Extraterritorial Relief

In several cases, although the court concluded that it had extraterritorial jurisdiction over the case, it declined to enforce a lower court's international relief in those foreign countries where the defendant had adjudicated superior rights to the plaintiff. In *George W. Luft Co., v. Zande Cosmetic Co.,* 142 F.2d 536, 541 (2d Cir.1944), the court limited the lower court's injunction to include only those countries where the plaintiff had established a superior right to use the trademark. The court concluded that it could not "perceive upon what theory a plaintiff can recover damages for acts in the United States resulting in a sale of merchandise in a foreign country under a mark to which the defendant has established, over the plaintiff's opposition, a legal right of use in that country. Consequently, neither the injunction nor the accounting should cover activities of the defendants, either here or abroad, concerned with sales in countries where the defendants have established rights superior to the plaintiff's." *Id.*

Similarly, in *Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 744, 746 (2d Cir. 1994), while recognizing extraterritorial jurisdiction over the case, the court also acknowledged that there are "limits on the application of the Lanham Act beyond our borders.... Though Congress did not intend the Lanham Act to be used as a sword to eviscerate completely a foreign corporation's foreign trademark, it did intend the Act to be used as a shield against foreign uses that have significant trademark-impairing effects upon American commerce." Because the district court did not consider the three part *Bulova* test when fashioning its extraterritorial injunction, the appellate court found the injunction too sweeping. The court vacated and remanded the lower court's extraterritorial injunction, directing the

lower court to "grant an extraterritorial injunction carefully crafted to prohibit only those foreign uses of the mark ... that are likely to have a significant trademark-impairing effect on United States commerce." *Id.* at 746.

### 5. Defendant's Arguments Are Premature

Defendant has misconstrued the issue. The question is not, as the defendant claims, whether or not this Court has discretion to deny Plaintiff's request for relief. Indeed, before this Court can decide whether or not relief can be granted, and what type of relief can be granted, it must first hear the case. It is customary to first hear a case, and then, if liability is determined, to fashion a remedy as justice requires. It is true, as Defendant points out, that this Court should consider conflict with foreign laws when fashioning appropriate relief. Certainly, a court must consider the *Bulova* factors to design just relief. However, it is premature to determine relief or to limit jurisdiction.

In *Bulova,* the court *first* determined whether extraterritorial jurisdiction was proper *before* it determined whether the extraterritorial injunction was proper. "On the facts in the record we agree with the Court of Appeals that the petitioner's activities, when viewed as a whole, fall within the jurisdictional scope of the Lanham Act.... Nor do we doubt the District Court's jurisdiction to award appropriate injunctive relief *if warranted by the facts after trial.*" *Bulova Watch Co.,* 344 U.S. at 285, 289, 73 S.Ct. at 255, 257 (emphasis added).

Additionally, Defendant's reliance on *Vanity Fair* and *Goldberg* is misplaced. In both cases, the court declined to exercise jurisdiction because the subject matter at issue was a foreign trademark or patent, requiring a determination of the validity of the foreign trademark or patent based upon foreign trademark or patent law. Under those circumstances, it is entirely proper for a foreign country which

has issued intellectual property rights in the form of trademarks or patents to determine its own intellectual property law. However, these cases are distinguishable because in the matter at hand, the Court is determining the infringement of a United States trademark under United States law.

### B. District Courts Have Discretion to Decline Jurisdiction under the Lanham Act

■ Although a district court may have the power to hear a case, in rare cases it is appropriate to decline to exercise that power based upon the doctrine of *forum non conveniens,* conflict with foreign laws, or comity. The crucial issue in declining to exercise jurisdiction is the existence of a foreign trademark, requiring a United States court to adjudicate the validity of a foreign trademark based on foreign law. After considering the factors for each of these principles, a court does have discretion to decline to exercise jurisdiction.

The *Vanity Fair* court declined to exercise extraterritorial jurisdiction over the part of the case involving a foreign trademark on the grounds of *forum non conveniens,* based on the test set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *Vanity Fair Mills, Inc.,* 234 F.2d at 646. The Court, in enumerating the criteria upon which the *forum non conveniens* analysis must be based, cautioned that "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* The doctrine "presupposes at least two forums in which the defendant is amenable to process." *Gulf Oil Corp.,* 330 U.S. at 507, 67 S.Ct. at 842. The private interests to consider are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of

a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgement if one is obtained.." *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843. In addition, there are numerous public interest factors which must be considered. *Id.*

■ The *Vanity Fair* court further declined extraterritorial jurisdiction on conflict of laws grounds, noting that the crucial issue was the determination of a foreign trademark based on foreign trademark laws. *Vanity Fair Mills, Inc.,* 234 F.2d at 646. The principle of conflict of foreign laws also applies when the defendant has established superior rights in a foreign court of law or when foreign litigation is currently pending. *See Ocean Garden, Inc.,* 953 F.2d at 503–504; *Star–Kist Foods, Inc.,* 769 F.2d at 1396; *American Rice, Inc.,* 701 F.2d at 415–416. Therefore, to the extent that there has been an adjudication on the merits in a foreign court determining that a defendant has a legal right to use its trademarks, and that those trademarks do not infringe on a plaintiff's trademarks, conflict of laws must be considered. *American Rice, Inc.,* 701 F.2d at 415–416. Additionally, to the extent that there is pending litigation in a foreign court or patent office to determine whether a defendant has a legal right to use its trademarks, conflict of laws must be considered. *Star–Kist Foods, Inc.,* 769 F.2d at 1396.

Likewise, the principle of comity turns on the issue of determining the validity of a foreign trademark based on foreign law. In *Goldberg,* 203 U.S.P.Q. at 718, the court declined to exercise jurisdiction over British and Canadian patent disputes on the basis of comity stating, "In an action where claims of infringement of foreign patents are made, the validity of the patents would necessarily be in issue. To determine the validity of patents granted by foreign governments would invite conflicts with the administrative and judicial officers of those governments. The power to adjudicate conflicts of this type should be exercised with great reluctance."

## C. Discretion to Deny Extraterritorial Jurisdiction Should Not be Exercised at This Time

■ The proper time for a full consideration of extraterritorial jurisdiction is after the adjudication of domestic Lanham Act claims. At that time, it would be appropriate for the Court to consider the *Bulova* test in determining the scope of extraterritorial jurisdiction, as well as whether the principles of *forum non conveniens,* comity or conflict of laws might apply.

Delaying consideration of extraterritorial jurisdiction until after the adjudication of the domestic Lanham Act claims reduces litigation expenses, conserves judicial resources, and expedites the trial on the merits covering the domestic claims. The complexity of extraterritorial jurisdiction analysis, as evidenced by the extended discussion on pages 5–16, requires thoughtful and thorough deliberation. The parties are currently engaged in parallel litigation in at least two foreign jurisdictions. Thus, the changing and ongoing nature of litigation in foreign courts, a crucial factor in the analysis, also warrants deferring the consideration to a later date.

T & B simply requests that the Court make this analysis and consider these factors after adjudication of its domestic Lanham Act claims, agreeing to withdraw its Lanham Act claims arising from Panduit's foreign business activities in the event it does not prevail on its domestic claims. This is a reasonable and practical request, which should save both time and money.

Based on the duration, scope and complex nature of the ongoing litigation, the Court concludes that the interests of the parties are advanced by deferring the determination of extraterritorial jurisdiction of the Lanham Act claims arising from foreign business activities until after a trial on the domestic claims.

## IV. CONCLUSION

This Court has jurisdiction to hear T & B's extraterritorial claims. The Court has discretion to decline to exercise its jurisdiction over Lanham Act claims arising from Panduit's foreign business activities, however, a full consideration should await the outcome of the trial on the domestice Lanham Act claims.

For the foregoing reasons, **T & B's motion for an order to delay adjudication of its extraterritorial Lanham Act claims is GRANTED as reflected in this Court's order of September 2, 1999.**